**LABATON KELLER SUCHAROW LLP**
Jonathan Waisnor (CA 345801)
jwaisnor@labaton.com
James Fee (*Pro Hac Vice* Application Forthcoming)
jfee@labaton.com
Alexander Schlow (*Pro Hac Vice* Application Forthcoming)
aschlow@labaton.com
Woodworth Winmill (*Pro Hac Vice* Application Forthcoming)
wwinmill@labaton.com
Stephen Kenny (*Pro Hac Vice* Application Forthcoming)
140 Broadway, Floor 34
New York, NY 10005
Telephone: 212-907-0700
Facsimile: 212-818-0477

Counsel for Petitioners

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TOMMY ALLEN AND 355 OTHER INDIVIDUALS**[1], <br><br> Petitioners, <br><br> vs. <br><br> **BAMTECH, LLC;** <br> **DISNEY PLATFORM DISTRIBUTION, INC.** (d/b/a Disney Streaming Services, LLC); <br> **ESPN, INC.**; and <br> **THE WALT DISNEY COMPANY** (d/b/a Disney Platform Distribution, Inc.). <br><br> Respondents. | CASE NO.: _____ <br><br> **PETITION TO COMPEL ARBITRATION** |

---

[1] A complete list of Petitioners is attached as Exhibit 1 hereto.

Pursuant to 9 U.S.C. § 4, Petitioners bring this petition to compel arbitration against BAMTech, LLC ("BAMTech"), Disney Platform Distribution, Inc. (d/b/a Disney Streaming Services, LLC), ESPN, Inc. ("ESPN"), and The Walt Disney Company (d/b/a Disney Platform Distribution, Inc.) (collectively, "Respondents" or "Disney"), as a result of Respondents' refusal to arbitrate with their customers in accordance with their agreements.

## INTRODUCTION

1. Petitioners Tommy Allen and the 355 other individuals identified in Exhibit 1 hereto (collectively, "Petitioners") are current or former ESPN+ subscribers who are attempting to arbitrate individual claims against Respondents for their disclosure of Petitioners' personally identifiable information and video viewing history to unrelated third parties without consent in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") and equivalent state laws. Respondents conduct is in clear violation of the VPPA, which broadly prohibits video tape service providers from "knowingly disclos[ing], to any person," the "personally identifiable information" of "consumers" like Petitioners. 18 U.S.C. § 2710(a)–(b).

2. To subscribe to the ESPN+ services, each consumer must agree to the Disney+ and ESPN+ Subscriber Agreement ("ESPN+ SA"), which includes a mandatory binding arbitration clause and class action waiver.

3. Petitioners agreed to resolve their disputes through individual arbitration administered by JAMS Mediation, Arbitration and ADR Services ("JAMS") per the Arbitration Provision in the ESPN+ SA (Updated: September 27, 2022) ("Operative ESPN+ SA").[2]

4. By its terms, the Operative ESPN+ SA applies to "all disputes and claims between" the user and Respondents "[i]ncluding all related disputes involving The Walt Disney Company or its affiliates" concerning the ESPN+ services "except

---

[2] A true and correct copy of the Operative ESPN+ SA is attached hereto as Exhibit 2

disputes relating to the ownership or enforcement of intellectual property rights." Operative ESPN+ SA, ¶ 7.

5. The Arbitration Provision has an extremely broad delegation clause under which the arbitrator has "the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this contract, including, without limitation the arbitrability of any dispute, and any claim that all or any part of [the SA] are void or voidable." *Id.* ¶ 7.

6. Further, the Arbitration Provision expressly states that, except for a narrow carve-out for intellectual property disputes, it applies to "all disputes between you and us (**including any related disputes involving The Walt Disney Company or its affiliates**)." *Id.* (emphasis added). Accordingly, all Respondents are contractually bound to arbitrate their disputes with Petitioners.

7. Petitioners here seek to do exactly what the Operative ESPN+ SA requires them to do and precisely what Respondents have argued in at least three (3) class actions with substantially similar claims and identical arbitration provisions– have their claims against Respondents decided by a JAMS arbitrator. Unfortunately, Respondents' actions in response to Petitioners' claims demonstrate that Respondents have and will continue to refuse arbitration of Petitioners' claims absent relief of this Court.

8. Petitioners now ask this Court to compel arbitration before JAMS under its Streamlined Rules.

## PARTIES

9. Petitioners are 356 ESPN+ subscribers who viewed ESPN+ video content on the ESPN+ platform, thus agreeing to the Operative ESPN+ SA. A list of the email addresses associated with Petitioners' ESPN+ accounts is included in Exhibit 1.

10. BAMTech, LLC, an indirect subsidiary of The Walt Disney Company, is a Delaware corporation with its principal place of business at 1211 Avenue of the

Americas, New York, NY 10036. BAMTech, LLC jointly operates and maintains the ESPN+ services and platform with Disney Platform Distribution, Inc. The ESPN+ services include the ESPN+ website, applications, video players and related software, all associated content and related media, and all elements of the ESPN and Disney+ services.[3]

11. Disney Platform Distribution, Inc. (d/b/a Disney Streaming Services, LLC), an indirect subsidiary of The Walt Disney Company, is a Delaware Corporation with its principal place of business at 500 S. Buena Vista St., Burbank, California, 91521. Disney Platform Distribution, Inc. jointly operates and maintains the Disney+ and ESPN+ streaming services with BAMTech, LLC, and offers the "Disney Bundle," which is a combined subscription package granting access to the ESPN+ and Disney+ streaming services.

12. ESPN, Inc., an indirect subsidiary of The Walt Disney Company, is a Delaware corporation with its principal place of business at 935 Middle Street, Bristol, CT 06010. ESPN, Inc. is a sports programming and entertainment company that offers the ESPN+ paid subscription service.[4]

13. The Walt Disney Company is an American multinational, mass media and entertainment conglomerate that incorporated in Delaware with its principal place of business at 500 S. Buena Vista St., Burbank, California, 91521. The Walt Disney Company's main business units include divisions in television, broadcasting, streaming media, theme park resorts, consumer products, publishing, and international operations. Through these divisions, The Walt Disney Company's owns and operates direct-to-consumer streaming services including the ESPN and ESPN+ streaming services.

---

[3] *See* Ex. 2 at 2; Exhibit 3 (a true and correct copy of the amended ESPN+ Subscriber Agreement) at 1-2.

[4] *See* Brief in Support of ESPN, Inc.'s Motion to Compel Arbitration and Stay Action, *Swartz v. ESPN, Inc.*, No 1:22-cv-01523-KM (M.D. Pa Dec. 12, 2022), ECF No. 13 at 2.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action under 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 because the underlying controversy involves claims arising under the laws of the United States.

15. This Court has personal jurisdiction over Respondents because they regularly conduct business in California and a substantial part of the harm, events, and conduct giving rise to Petitioners' claims occurred in California.

16. Venue is proper in this district under 28 U.S.C. § 1391 because the arbitrations are required to take place in this District and a substantial portion of the events giving rise to the claims occurred here. Venue is also proper in this district under the terms of the operative arbitration agreement, which specifics courts in this District as the venue for adjudicating disputes relating to arbitration.

## FACTUAL ALLEGATIONS

**A.  The ESPN+ Subscriber Agreement Provides for Mandatory Arbitration.**

17. ESPN+ is a subscription video streaming service that offers a wide variety of prerecorded and live on-demand entertainment accessible via the ESPN+ website and ESPN mobile application (collectively, the "ESPN+ Platform").

18. Petitioners are ESPN+ users who allege that ESPN+ has improperly transmitted their personally identifying information ("PII"), along with the names of videos they have requested or obtained on the ESPN+ Platform, to numerous third-party advertisers and data brokers without their consent, in violation of the VPPA. As set forth below, Petitioners' claims must be decided in arbitration under the user agreement ESPN+ drafted.

19. To access the ESPN+ Platform, Respondents required each Petitioner to agree to the ESPN+ SA, which contains a mandatory arbitration clause and class action waiver.

20. Respondents have confirmed that each of the Petitioners in this action has or had an ESPN+ subscription and viewed ESPN+ video content.

21. By its terms, the Operative ESPN+ SA governs "all disputes and claims between" the Petitioners and BAMTech, and "related disputes involving The Walt Disney Company or its affiliates," including ESPN, "except disputes relating to the ownership or enforcement of intellectual property rights." *See* Ex. 2. ¶ 7.

22. "Dispute" is defined to mean "any dispute, action, or other controversy, whether based on past, present, or future events," between Petitioners and Respondents "concerning the Disney+ Service, ESPN+ Service, or this Agreement, whether in contract, tort, warranty, statute, regulation, or other legal or equitable basis." *Id*. The "ESPN+ Service" includes "the ESPN+ website, application and associated content and services." *Id* at Introduction.

23. The Operative ESPN+ SA has an extremely broad delegation clause under which the arbitrator has "the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this contract, including, without limitation the arbitrability of any dispute, and any claim that all or any part of [the SA] are void or voidable." *Id.* ¶ 7. It further specifies that JAMS Streamlined Arbitration Rules & Procedures ("JAMS Rules") govern arbitrations initiated thereunder. *Id.*

24. Consistent with the delegation clause in the Operative ESPN+ SA, the JAMS Rules provide that the arbitrator "shall" decide "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration." JAMS, Streamline Rules of Arbitration, Rule 8(b), available at https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8.

25. Thus, if the parties dispute the enforceability of the arbitration provision or how that provision should be applied, an arbitration must decide that dispute. *Id.*

26. The Operative ESPN+ SA prohibits Petitioners from bringing class proceedings against Respondents and further requires that JAMS administer arbitration under the Streamlined Arbitration Rules and Procedures of JAMS ("Streamlined Rules"). *Id*.

27. Under the Streamlined Rules, "[t]he Parties shall be deemed to have made these Rules a part of their Arbitration Agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Streamlined Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule." *Id.*, Streamlined Rule 1(b).

28. Streamlined Rule 26 mandates that each party must pay "its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the parties agree on a different allocation of fees and expenses." *Id*. at Streamlined Rule 26.

29. The Streamlined Rules incorporate JAMS's Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, which states, in relevant part, "when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services." *See* Exhibit 4 (a true and correct copy of the JAMS Consumer Arbitration Minimum Standards Website).

30. Therefore, Respondents are obligated to pay their portion of the required filing fees and all other arbitration costs as mandated by JAMS.

**B.  Respondents Materially Breached the Operative ESPN+ SA After Thousands of Consumers Filed Arbitrations.**

31. Between January 23, 2023, and July 28, 2023, each Petitioner notified Respondents of their intent to commence individual arbitration against Respondents

with JAMS as required by the Operative ESPN+ SA. *See* Exhibit 5 (a true and correct copy of one of the Notice of Dispute letters).

32. The parties entered into a tolling agreement on March 17, 2023 ("Tolling Agreement") to reserve their rights and agreed to mediate before Judge Jay Gandhi (Ret.) of JAMS on May 2, 2023. *See* Exhibit 6 (a true and correct copy of the Tolling Agreement). The Tolling Agreement imposed an effective freeze on the arbitration provision in place at the time of execution, including a provision preventing Respondents from retroactively applying any terms that materially amended, altered or changed Petitioners' right to arbitrate before JAMS and allowing Petitioners to opt out of any terms amending, modifying, or changing the Operative ESPN+ SA through letter from Petitioners' counsel:

> The Parties further agree that the agreement to mediate or failure to pursue a Tolled Claim during the pendency of this Agreement does not constitute an agreement as to the applicable version of the Disney/BAMTech Subscriber Agreement that might apply to the Tolled Claims. Tolling ***Defendants will not enforce or retroactively apply any terms that materially alter, amend, or change the or impairs the Tolling Claimants' right to arbitrate the Tolled Claims in accordance with the Disney/BAMTech Subscriber Agreement (updated on September 27, 2022)***. If this Agreement expires or is terminated by any Party in accordance with Paragraphs One or Three above***, the Tolling Claimants, through their counsel Labaton Sucharow LLP[5], shall have 30 days from the Termination Date or expiration of the Tolling Period to in order to opt out of any amended terms placed into effect during the Tolling Period through letter from Tolling Claimants' counsel.*** The Tolling Period shall not be included in calculating the opt out period for any amended Terms placed into effect during the pendency of this Agreement.

*Id*. ¶ 10. (emphasis added).

---

[5] Now Labaton Keller Sucharow LLP.

33. On May 2, 2023, the parties attended a mediation with the Hon. Jay Gandhi (Ret.) of JAMS. The mediation did not result in the resolution of any Petitioner's claim.

34. Therefore, on June 22, 2023, the 1,668 JAMS Petitioners commenced individual arbitration with JAMS per the Operative ESPN+ SA. *See* Exhibit 7 (a true and correct copy of a representative demand).

35. JAMS confirmed the JAMS Petitioners filing on June 27, 2023 and issued an invoice to the JAMS Petitioners for their share of the JAMS filing fees. *See* Exhibit 8 (a true and correct copy of the invoice to the JAMS Petitioners).

36. On June 28, 2023, the JAMS Petitioners notified JAMS of the parties' agreement to hold off on tending any filing fees until August 7, 2023, while the parties conferred about the structuring of the JAMS Petitioners' filing. *See* Exhibit 9 (a true and correct copy of the June 28, 2023 email to JAMS).

37. In response to the JAMS Petitioners' filing, Respondents requested, and the parties later agreed, to engage in a limited bellwether proceeding governed by a separate agreement ("Bellwether Agreement"), executed on August 10, 2023, in which they exchanged information on Petitioners' and other clients represented by undersigned counsel, agreed to conduct limited bellwether proceedings, and agreed to attend a second mediation. *See* Exhibit 10 (a true and correct copy of the Bellwether Agreement). The parties also agreed to continue the tolling period for all Petitioners, including the Petitioners who had not yet filed their demands with JAMS, "to and through fourteen (14) days following the conclusion of the Second Mediation." *Id.* ¶ 8. The Bellwether Agreement explicitly prohibited the unilateral termination of the Tolling Agreement before the completion of the second mediation. *Id.*

38. On August 25, 2023, the parties engaged in a conference call with JAMS to discuss the agreed upon bellwether procedures and further requested that JAMS stay

the remaining claims pending the outcome of the bellwether proceedings and second mediation.

39. JAMS subsequently issued an invoice to Respondents for payment to pay the filing fees associated with the ten (10) bellwether proceedings, which Respondents paid on September 6, 2023. *See* Exhibit 11 (a true and correct copy of the September 6, 2023 invoice).

40. The parties submitted their list of ten (10) bellwethers to JAMS on December 4 and 14, 2023 then immediately began arbitrating each case.

41. Between December 2023 and August 2024, the parties vigorously arbitrated each of the bellwether cases.

42. The Bellwether Agreement also required the parties to exchange information and for Respondents to confirm whether each Petitioner had an ESPN+ subscription and watched video content via the ESPN+ platform prior to the Second Mediation.

43. Each Petitioner's information was submitted through this process and Respondents confirmed that each Petitioner was an ESPN+ subscriber.

44. The parties returned to mediation on September 3, 2024, before Judge Jay C. Gandhi (Ret.) of JAMS. The second mediation was unsuccessful.

45. Therefore, on September 6, 2024, Petitioners' counsel contacted Respondents' counsel to confirm that the JAMS Petitioners would continue to be administered according to the rules and policies effective at the time they filed their demands and schedule a time to meet and confer about the approaches for resolving and adjudicating the remaining Petitioners' claims before the expiration of the tolling period on September 18, 2024. *See* Exhibit 12 (a true and correct copy of Petitioners' September 6, 2024 letter to Respondents)..

46. During the parties meet and confer conference on September 13, 2024, Respondents refused to engage in any discussions relating to the adjudication of the

claims of "any of the [Petitioners] before JAMS," including the JAMS Petitioners' claims filed before JAMS on June 22, 2023. In refusing to arbitrate before JAMS, Respondents argued that they specified a new arbitration provider under the current ESPN+ SA updated on January 25, 2024 ("Amended ESPN+ SA") ADR Services, Inc. ("ADR") or, if ADR is not available to arbitrate, National Arbitration and Mediation ("NAM"). *See* Exhibit 13 (a true and correct copy of Respondents' September 13, 2024 letter to Petitioners); *see also* Ex. 3 (Amended ESPN+ SA). By refusing to arbitrate before JAMS, Respondents clearly and unmistakably indicated their intention to breach the Operative ESPN+ SA, the Tolling Agreement and the Bellwether Agreement.

47. Thereafter, on October 9, 2024, the JAMS Petitioners asked JAMS to lift the August 2023 stay for the remaining JAMS Petitioners and issue a revised invoice to the JAMS Petitioners and Respondents for their applicable portions of the filing fees and initial JAMS fees. *See* Exhibit 14 (a true and correct copy of Petitioners' October 9, 2024 letter to JAMS).

48. In response, on October 10, 2024, Respondents sent a letter to JAMS objecting to JAMS's administration of the case and stating that they would not participate in any JAMS arbitrations of any JAMS Petitioners' claims. *See* Exhibit 15 (a true and correct copy of Respondents' October 10, 2024 letter to JAMS).

49. On October 17, 2024, all Petitioners opted out of the Amended ESPN+ SA, including all amendments and modifications contained therein and all other changes and modifications made to it during the tolling period (*i.e.*, between March 17, 2023 and September 18, 2024) through letter from their counsel, Labaton Keller Sucharow LLP ("LKS") before the expiration of the tolling period, as instructed by Section 10 of Tolling Agreement. *See* Exhibit 16 (a true and correct copy of Petitioners' October 17, 2024 letter to Respondents); *see also* Ex. 10 (Bellwether Agreement).

50. The following day, October 18, 2024, the JAMS Petitioners wrote to JAMS in response to Respondents' October 10, 2024 correspondence. In their response, the JAMS Petitioners pointed out the hypocrisy of Respondents' claim that JAMS does not have jurisdiction over the claims at issue in the present matter while simultaneously representing to a federal court that it should compel substantially similar claims under the identical Arbitration Provision contained within the Operative ESPN+ SA to arbitration at JAMS. The JAMS Petitioners further clarified several misrepresentations made by Respondents about the provisions of the Tolling Agreement and Bellwether Agreement, none of which empowered Respondents to retroactively enforce terms that materially altered the Operative ESPN+ SA to refuse to participate in arbitrations under the Operative ESPN+ SA. *See* Exhibit 17 (a true and correct copy of the JAMS' Petitioners' October 18, 2024 letter to JAMS).

51. Respondents notified JAMS on October 21, 2024 that Respondents "will not participate in any further proceedings before JAMS of these purported claims." *See* Exhibit 18 (a true and correct copy of Respondents' October 21, 2024 letter to JAMS).

52. Subsequently, on November 12, 2024, JAMS declined to administer the remaining JAMS Petitioners claims in light of Respondents' refusal to participate in the proceedings but stated that it would administer the demands "[i]f the parties agree to JAMS or a court orders the parties to proceed here." *See* Exhibit 19 (a true and correct copy of the JAMS November 12, 2024 letter to the parties).

53. By refusing to participate in any proceedings before JAMS, Respondents have anticipatorily breached their agreement to arbitrate with Petitioners under the Operative ESPN+ SA.

  **C. Issues of the Enforceability, Unconscionability, and Applicability of the Amended SLA, or Whether Any Respondents Are Proper Parties to the Arbitration, are Delegated to the Arbitrators.**

54. Following the second mediation, on September 13, 2024, Respondents notified Petitioners of their refusal to honor the provisions in the parties' Tolling

Agreement, namely that Respondents would not retroactively apply any amendments or modifications made to the ESPN+ SA while Petitioners' claims were tolled, or the fourteen day opt-out provision contained in the Bellwether Agreement. *See* Ex. 13.

55. Instead, Respondents notified Petitioners of their intent to apply the Amended SA to all Petitioners and refused to proceed with arbitrating the JAMS' Petitioners claims. *Id*. Respondents took this shocking approach despite Petitioners' clear compliance with all pre-arbitration steps in the Operative ESPN+ SA and the provisions of the Tolling Agreement and Bellwether Agreement.

56. The Amended ESPN+ SA includes complex procedural requirements transparently designed to prevent any meaningful number of claimants from pursuing claims. *See* Ex. 3 (ESPN+ Amended SA).

57. These new provisions entail more detailed pre-dispute notice obligations and mandate that each consumer personally attend and actively participate in an individualized meet-and-confer conference at Respondents' request, even if counsel represents them before the consumer can commence arbitration. *Id*.

58. The Amended ESPN+ SA shifts the arbitration administrator from JAMS to ADR Services, Inc. ("ADR") or, if ADR is not available to arbitrate, National Arbitration and Mediation ("NAM"). *Id*.

59. The Amended Arbitration Provision also includes an "offer of settlement" provision that allows Respondents to shift all arbitration costs to a consumer if the consumer fails to secure an award greater than Respondents' offer or, at the very least, prevents a prevailing consumer from exercising their statutory rights to attorneys' fees. *Id*.

60. Respondents have been on notice of Claimants' claims since 2023 and entered into the Tolling Agreement and Bellwether Agreement while the Operative ESPN+ SA was in effect. The Tolling Agreement explicitly precludes Respondents from enforcing, attempting to "retroactively apply," or impairing the Petitioners' right

to arbitrate with JAMS under the Operative ESPN+ SA.  The Tolling Agreement further provides a mechanism for opting out of any changes or modifications made during the tolling period.

61. By the parties' own agreements, the Amended ESPN+ SA cannot apply to Petitioners because all Petitioners properly opted out of the Amended ESPN+ SA through counsel within 30 days of the expiration of the tolling period under Section 10 of the Tolling Agreement.

62. Regardless, under the Operative ESPN+ SA, all disputes over arbitrability are delegated to the arbitrator.  *See* Ex. 2. ¶7 ("You and . . . ESPN+ empower the arbitrator with the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this contract, including, without limitation the arbitrability of any dispute, and any claim that all or any part of this Agreement are void or voidable.").  Such delegation provisions are routinely enforced.  *See, e.g., Henry Schein, Inc. v. Archer & White Sales, Inc.,* 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue."); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U. S. 79, 83-85 (2002)).

63. Further, disputes regarding the Tolling Agreement and Bellwether Agreement also fall within the definition of "dispute" in the Operative ESPN+ SA. *See* Exhibit 2. ¶7 ("You and . . . ESPN+ agree to arbitrate . . . all disputes between you and us . . . that are not resolved informally, except disputes relating to the ownership or enforcement of intellectual property rights."). This broad provision "clearly and unmistakably" delegates disputes under the Tolling Agreement to the arbitrator. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016).  In fact, Respondents have successfully argued the same position to multiple courts.

### D. Respondents Have Successfully Compelled Multiple Class Actions to Arbitration Under Substantially Identical Arbitration Provisions and Continue to Move to Compel Arbitration Under the Same Terms in Other VPPA Cases.

64. On July 31, 2023, Respondent The Walt Disney Company successfully compelled a putative class action data privacy lawsuit brought in the Northern District of California to arbitration. *See* Order Granting Defendant's Motion to Compel Arbitration, *Sadlock v. The Walt Disney Co.*, No. 3:22-cv-01955-EMC (N.D. Cal. July 31, 2023), ECF No. 36 ("*Sadlock* Order"). The *Sadlock* plaintiffs asserted claims under the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. §§ 57011, arising out of The Walt Disney Company's purported use of a third party tracking pixel on ESPN.com. The Walt Disney Company successfully moved to stay that action in favor of individual arbitration. There, it successfully argued that agreeing to the ESPN+ SA (Updated September 29, 2021) ("2021 ESPN+ SA") – the same Operative ESPN+ SA that governs Petitioners' claims – the plaintiff assented to a binding arbitration provision on the ESPN.com website. *Id*. The Walt Disney Company convinced the court that the Operative ESPN+ SA at issue in this action "clearly and unmistakably" delegates to the arbitrator, not a court, the "exclusive authority" to resolve "any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this contract, including the arbitrability of any dispute. . . ." *See* Motion to Compel Arbitration and Stay Action, *Sadlock,* ECF No.18 at 8, 20-22. The *Sadlock* court accepted The Walt Disney Company's interpretation of these provisions and held that the "gateway issues of arbitrability have been delegated to the arbitrator." *Sadlock* Order at 26.

65. Similarly, in *Swartz v. ESPN, Inc*. in the Middle District of Pennsylvania, Respondent ESPN has moved to compel arbitration of substantially similar claims under the identical Arbitration Provision at issue here because the "[a]rbitration Provision specified that proceedings will be administered by JAMS pursuant to the

JAMS Streamlined Arbitration Rules & Procedures." *See* Brief in Support of ESPN, Inc.'s Motion to Compel Arbitration and Stay This Action, *Swartz v. ESPN, Inc.*, No 1:22-cv-01523-KM (M.D. Pa Dec. 12, 2022), ECF No. 13 at 2; *see also*, Ex. 2. ¶ 7. Respondent ESPN further argued that the Arbitration Provision requires that the arbitrator, not the court, decides all disputes between the parties including any disputes about whether claims against any particular Disney affiliated entity are within the scope of the arbitration provision. *Id.*

66. Finally, consumers in *Antoine v. ESPN Enterprises, Inc.* brought a putative class action against ESPN Enterprises, Inc. ("ESPN Enterprises") alleging harm to customers based on the same wrongful practices alleged by Petitioners. *See* Complaint, *Antoine v. ESPN Enters., Inc.*, No. 2:23-cv-00887-JLB-NPM (M.D. Fla. Dec. 7, 2023), ECF No. 1. ESPN Enterprises successfully moved to stay that action in favor of individual arbitration. *See* Order, *Antoine*, ECF No. 23 ("*Antoine* Order"). ESPN Enterprises, like the Walt Disney Company, argued in *Antoine* that the same Arbitration Provision at issue in this action "clearly and unmistakably" delegates issues of arbitrability to the arbitrator, including "all questions of applicability, enforceability, and scope." Motion to Compel Arbitration, *Antoine*, ECF No. 26 at 16. ESPN Enterprises also contended that the Arbitration Provision "incorporate[s] the JAMS rules," which rules "provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." *Id.* at 18. "Incorporating the JAMS Rules into an agreement constitutes clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability even if no other delegation language appears elsewhere in the contract." *Id*.

67. The court accepted ESPN Enterprises' argument and ordered the parties to arbitrate their dispute promptly "in accordance with [the Parties'] agreements."

*Antoine* Order at 1.  However, the plaintiff in *Antoine* did not promptly initiate arbitration under the terms of the ESPN+ SA that was in place at that time, which called for individual arbitration before JAMS.  Instead, on February 14, 2024, eight weeks after the order compelling arbitration and three weeks after the Amended ESPN+ SA was posted, the plaintiff sent ESPN Enterprises a notice of dispute purporting to invoke the Operative ESPN+ SA naming JAMS as the arbitral forum.  In response, ESPN Enterprises refused to honor the parties' prior agreement, instead arguing that the Amended ESPN+ SA applied. The *Antoine* plaintiff returned to court and moved to compel under the prior ESPN+ terms.  ESPN Enterprises opposed plaintiff's motion arguing that arbitration is proper before ADR Services.  The motion remains pending before the court.

68.     Unlike *Antoine*, the Petitioners and the JAMS Petitioners here promptly moved to compel.  Further, the Tolling Agreement precluded Respondents from applying any amendments and modifications to the ESPN+ SA during the tolling period and allowed Petitioners to opt out of those amendments and modifications within thirty days of the expiration of the tolling period through written letter from Petitioners' counsel, which Petitioners did.

## CLAIM FOR RELIEF

### Petition to Compel Arbitration (9 U.S.C. § 4)

69.     Petitioners incorporate and reallege each preceding paragraph as if fully set forth herein.

70.     Each Petitioner entered into the Operative ESPN+ SA with Respondents to resolve their claims through binding individual arbitration administered by JAMS. Respondents confirmed that (1) each Petitioner has or had an ESPN+ subscription, thereby agreeing to the Operative ESPN+ SA, and (2) each Petitioner viewed ESPN+ video content through the ESPN+ platform.

71. The ESPN+ SA contains an arbitration provision covering "any dispute, action, or other controversy, whether based on past, present, or future events," between Petitioners and Respondents "concerning the Disney+ Service, ESPN+ Service, or this Agreement, whether in contract, tort, warranty, statute, regulation, or other legal or equitable basis." Ex. 2. ¶ 7.

72. The Operative ESPN+ SA designates JAMS as the arbitration administrator. *Id*.

73. The Federal Arbitration Act, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U. S. 79, 83-85 (2002)).

74. Respondents have refused to arbitrate with Petitioners under the Operative ESPN+ SA and have also indicated they will refuse to participate in arbitrations before JAMS under the Operative ESPN+ SA.

75. Petitioners are "aggrieved by the . . . failure, neglect, or refusal of [Respondents] to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. To remedy Respondents' breach of the Operative ESPN+ SA, Petitioners seek "an order directing that such arbitration proceed in the manner provided for in" the Operative ESPN+ SA. *See id.*

76. Because Respondents have refused to pay any arbitration fees for arbitrations filed with JAMS and any future claims filed with JAMS, Respondents have repudiated and breached their contractual obligation to arbitrate in accordance with the terms of the Operative ESPN+ SA.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court:

(a) Compel and order Respondents to arbitrate Petitioners' claims before JAMS, including any defenses to arbitrability or arguments concerning jurisdiction that Respondents may have;

(b) Retain jurisdiction to adjudicate any disputes arising from Respondents' arbitral obligations, including disputes related to fees or discovery, and to adjudicate Petitioners' claims on the merits, if required by Respondents' continued obstruction of the arbitrations;

(c) Award Petitioners' attorneys' fees and costs; and

(d) Grant Petitioners all further relief at law or in equity as may be just and proper.

DATED: April 30, 2025                **LABATON KELLER SUCHAROW LLP**

                                                      */s Jonathan Waisnor*
Jonathan Waisnor (Bar No. 345801)
James Fee (pro hac vice forthcoming)
Alexander F. Schlow (pro hac vice forthcoming)
Woodworth Winmill (pro hac vice forthcoming)
Stephen Kenny (pro hac vice forthcoming)
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700
Fax: (212) 907-7039
jwaisnor@labaton.com
jfee@labaton.com
aschlow@labaton.com
wwinmill@labaton.com
skenny@labaton.com

*Counsel for Petitioners*