1

**LABATON KELLER SUCHAROW LLP**

2

Jonathan Waisnor (CA 345801)
jwaisnor@labaton.com

3

James Fee (Admitted *Pro Hac Vice*)
jfee@labaton.com

4

Alexander Schlow (Admitted *Pro Hac Vice*)
aschlow@labaton.com

5

Stephen Kenny (Admitted *Pro Hac Vice*)
skenny@labaton.com

6

7

140 Broadway, Floor 34
New York, NY 10005

8

Telephone: 212-907-0700
Facsimile: 212-818-0477

9

10

Counsel for Petitioners

11

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

12

13

| | |
|---|---|
| **MATT ALLEN AND 3,552 OTHER INDIVIDUALS,** | **CASE NO.: 2:25-CV-03861** |
| Petitioners, | **PETITIONERS' AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION** |
| v. | |
| **BAMTECH, LLC, et al.,** | **Judge:** Michelle Williams Court |
| Respondents. | **Date:** October 3, 2025 |
| | **Time:** 1:30 p.m. |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on October 3, 2025 at 1:30 p.m., or as soon thereafter as counsel may be heard, Petitioners, by and through their attorneys and pursuant to 9 U.S.C. § 4, hereby move to compel BAMTech, LLC ("BAMTech"), Disney Platform Distribution, Inc. (d/b/a Disney Streaming Services, LLC) ("DPD"), ESPN, Inc. ("ESPN"), and The Walt Disney Company (d/b/a Disney Platform Distribution, Inc.) (collectively, "Respondents" or "Disney") to arbitrate Petitioners' data privacy claims in accordance with the ESPN+ Subscriber Agreement (last updated September 27, 2022), and for a stay of these proceedings pursuant to 9 U.S.C. § 3.

This motion is made on the grounds that Petitioners and Respondents agreed to arbitrate Petitioners' claims on a non-class basis before JAMS and further agreed any disputes concerning the arbitrability of their claims must be submitted to JAMS for resolution. This motion is based upon this Notice, the Petition, the following memorandum of points and authorities, the Declaration of Jonathan Waisnor ("Waisnor Decl.") and exhibits thereto, the pleadings and records on file herein, on such other and further argument and evidence as may be presented at the time of the hearing, and all matters of which this Court may take judicial notice.

DATED: July 1, 2025                LABATON KELLER SUCHAROW LLP

By: */s/ Jonathan D. Waisnor*
Jonthan D. Waisnor
Attorney for Petitioners

**PETITIONERS' AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**
Case No. **2:25-cv-03861**

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................... 7

BACKGROUND .............................................................................................. 9

    **A.**    **THE ESPN+ SUBSCRIBER AGREEMENT PROVIDES FOR MANDATORY ARBITRATION.** .......................................... 9

    **B.**    **AS PART OF THE PARTIES' MEDIATION EFFORTS, RESPONDENTS AGREE THAT THE OPERATIVE ESPN+ SA WILL GOVERN THE ARBITRATIONS.** ................... 10

    **C.**    **RESPONDENTS MATERIALLY BREACHED THE OPERATIVE ESPN+ SA.** ........................................ 12

    **D.**    **RESPONDENTS HAVE SUCCESSFULLY COMPELLED TWO CLASS ACTIONS TO ARBITRATION UNDER SUBSTANTIALLY IDENTICAL ARBITRATION PROVISIONS.** ......................................................... 12

LEGAL STANDARD ..................................................................................... 13

ARGUMENT ................................................................................................. 15

    **A.**    **THIS COURT SHOULD COMPEL ARBITRATION OF THE PARTIES' DISPUTE, INCLUDING ANY CHALLENGES TO ENFORCEABILITY AND SCOPRE OF THE OPERATIVE ESPN+ SA'S ARBITRATION PROVISION, TO JAMS.** ............................................. 15

        1.    The Operative ESPN+ SA Requires Respondents to Arbitrate Under JAMS Rules. .................................... 15

        2.    The Parties Entered into a Valid Arbitration Agreement. ............ 15

        3.    The Arbitration Agreement Covers the Present Dispute. ............. 16

        4.    The SA's Broad Delegation Clause Requires Nearly All of Respondents' Purported Objections to Arbitrability to be Determined by JAMS. .................................................. 17

        5.    The SA Encompasses Petitioners' Claims Against All Respondents. ........................................................... 19

    **B.**    **RESPONDENTS HAVE FAILED TO COMPLY WITH THE OPERATIVE ESPN+ SA AND CONTINUE TO REFUSE TO ARBITRATE** ..................................................... 21

    **C.**    **RESPONDENTS' MATERIAL BREACH OF THE OPERATIVE ESPN+ SA ENTITLES PETITIONERS TO ATTORNEYS' FEES UNDER CALIFORINA AND RHODE ISLAND LAW** .......................................................... 22

CONCLUSION ............................................................................................... 23

2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antoine v. ESPN Enters., Inc.*,
No. 2:23-cv-00887-JLB-NPM (M.D. Fla. Dec. 21, 2023) ............................ 12, 14

*Astra Oil Co. v. Rover Navigation, Ltd.*,
344 F.3d 276 ................................................................................................ 19

*BG Grp. PLC v. Republic of Arg.*,
572 U.S. 25 (2014) ...................................................................................... 17

*Black v. JP Morgan Chase & Co.*,
No. 10–848, 2011 WL 3940236 (W.D. Pa. Aug. 25, 2011) .............................. 16

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016) .................................................................... 13

*Chelsea Morgan Sec., Inc. v. Rappaport*,
3 F. Supp. 3d 791 (C.D. Cal. 2014) ............................................................ 15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .................................................................... 13

*Codding v. Pearson Educ., Inc.*,
842 F App'x 70 (9th Cir. 2021) .................................................................. 20

*Contec Corp. v. Remote Sol. Co.*,
398 F.3d 205 (2d. Cir. 2005) ...................................................................... 19

*De Leon v. Juanita's Foods*,
85 Cal. App. 5th 740 (2022) ...................................................................... 22

*Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l*,
370 U.S. 254 (1962) .................................................................................... 20

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .................................................................................... 14

*Espinoza v. Superior Court*,
  83 Cal. App. 5th 761 (2022) ................................................................22

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010).............................................................................16

*Grunwald-Marx, Inc. v. L.A. Joint Bd. Amalgamated Clothing Workers of Am.*,
  192 Cal. App. 2d 268 (Cal. Ct. App. 1961)........................................20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019)...............................................................................17

*Holzer v. Mondadori*,
  12 Civ. 5234, 2013 U.S. Dist. LEXIS 37168 (S.D.N.Y. Mar. 14, 2013) ....................................................................................................19

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)..........................................................................7, 17

*Kim v. Tinder, Inc.*,
  No. CV 18-03093, 2018 WL 6694923 (C.D. Cal. July 12, 2018) ....................13

*Lee v. Ticketmaster L.L.C.*,
  817 F. App'x 393 (9th Cir. 2020)........................................................14

*Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz*,
  1:13–CV–02449, 2013 WL 6185604 (M.D. Pa. Nov. 25, 2013) ......................16

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ..................................................................14

*Mohamed v. Uber Techs*,
  848 F.3d 1201 (9th Cir. 2016) .............................................................13

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983)..................................................................................13

*Newbill v. CVS Caremark, LLC*,
  683 F. Supp. 3d 1004 (D. Ariz. 2023) .................................................12

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024)................................................................17

4

*Ragone v. Atl. Video*,
  595 F.3d 115 (2d Cir. 2010) ............................................................... 18

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010)............................................................................... 17

*Sadlock v. Walt Disney Co.*,
  No. 22-CV-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31,
  2023) ............................................................................................ 11, 14

*Smith v. ComputerTraining.com Inc.*,
  772 F. Supp. 2d 850 (E.D. Mich. 2011) ............................................. 15

*Swartz v. ESPN, Inc.*,
  No 1:22-cv-01523-KM (M.D. Pa Dec. 12, 2022) ........................ 12, 14

*Williams v. West Coast Hospitals, Inc.*,
  86 Cal. App. 5th 1054 (2022) ............................................................. 22

*Wilson v. Cracker Barrel Old Country Store, Inc.*,
  No. 2:22-CV-195, 2023 WL 10476032 (N.D. Ga. Jan. 30, 2023) ...... 20

**Statutes**

9 U.S.C. § 2 .................................................................................................... 13

9 U.S.C. § 3 ................................................................................................ 1, 21

9 U.S.C. § 4 .......................................................................................... *passim*

18 U.S.C. § 2710 .......................................................................... 6, 7, 16, 19

Cal. Code Civ. Proc. § 1280 ......................................................................... 21

Cal. Code Civ. Proc. § 1281.97 .............................................................. 21, 22

Cal. Code Civ. Proc. § 1281.99 ................................................................... 22

RI Gen L. § 10-3-23 ................................................................................ 21, 22

RI Gen L. § 10-3-25 ..................................................................................... 22

**PETITIONERS' AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**
Case No. **2:25-cv-03861**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PETITIONERS' AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**
Case No. **2:25-cv-03861**

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

3    For decades, ESPN+, a video tape streaming service owned by Respondent The

4 Walt Disney Company, has mandated that its customers bring disputes with it in private

5 arbitration rather than court.  Petitioners are ESPN+ customers who seek to hold

6 Respondents accountable for disclosure of Petitioners' personally identifiable

7 information to unrelated third parties without Petitioners' consent, in violation of the

8 Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") and equivalent state laws.

9 Respondents have repeatedly asserted that video privacy claims belong in arbitration,

10 that all subscribers agree to its arbitration agreement, and that the arbitration can be

11 enforced by a wide range of Disney-affiliated entities, even against conduct that has

12 nothing to do with ESPN+ or the VPPA.  Unfortunately, when Petitioners sought to

13 pursue their claims through the arbitration process that Respondents forced on them,

14 Respondents refused to participate, leaving Petitioners' claims in procedural limbo.

15    Petitioners are each ESPN+ subscribers and agreed to an arbitration agreement

16 with Respondents at account signup.  ESPN+'s subscriber agreement ("Operative

17 ESPN+ SA") last updated on September 27, 2022 governs this dispute.  The Operative

18 ESPN+ SA requires Petitioners to arbitrate their claims before JAMS if the parties are

19 not able to resolve their dispute after an informal 60-day notice and negotiation period,

20 which would have allowed Petitioners to file arbitration demands as soon as March 24,

21 2023.  Petitioners, acting in good faith, negotiated with ESPN+'s counsel for several

22 months longer than this, during which the parties entered into a tolling agreement on

23 March 17, 2023 ("Tolling Agreement") and bellwether agreement on August 10, 2023

24 ("Bellwether Agreement").  Notably, the Bellwether Agreement expressly preserved

25 Petitioners' right to pursue individual arbitration administered by JAMS under the

26 Operative ESPN+ SA and opt out of any amendments and modifications made during

27 the tolling period.  When negotiations and mediation eventually reached an impasse,

28

**PETITIONERS' AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**
Case No. **2:25-cv-03861**

Petitioners expected Respondents to honor the parties' agreements and proceed to merits arbitrations before JAMS.  Respondents refused.

Instead, five days prior to the expiration of the tolling period, Respondents notified Petitioners that they "would not participate in any further proceedings before JAMS for these purported claims," based primarily on Respondents' position that they had dropped JAMS as their arbitration administrator in an agreement that they introduced after claims were already filed with JAMS ("Amended ESPN+ SA"). *See* Petition ¶ 47 and Ex. 13.  Because of Respondents' bad-faith refusal to fulfil its contractual obligations and participate in arbitration, JAMS was forced to administratively close Petitioners' cases until Respondents are ordered by this Court to participate in arbitration.

Petitioners now ask this Court to enter such an order compelling Respondents to arbitration before JAMS.  Arbitration must be compelled where, as here: (1) the parties have entered into a valid arbitration agreement, and (2) the agreement covers the dispute.  *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83–84 (2002).  Here, each Petitioner signed up for an ESPN+ account, subscribed to ESPN+'s services, and expressly agreed to the Operative ESPN+ SA.  The arbitration clause ("Arbitration Provision") in the Operative ESPN+ SA stated that disputes must be resolved by binding arbitration before JAMS and straightforwardly includes Petitioners' claims as disputes to be arbitrated.  All other issues, including whether VPPA claims are within the scope of the arbitration agreement (they are), whether the arbitration agreement covers VPPA claims against all Respondent entities (it does), and whether Respondents are precluded from avoiding arbitration based on a purported, post-dispute contract amendment that they agreed would not apply to Petitioners' VPPA disputes (they are) are for JAMS to decide.

**PETITIONERS' AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**
Case No. **2:25-cv-03861**

# BACKGROUND

**A.    THE ESPN+ SUBSCRIBER AGREEMENT PROVIDES FOR MANDATORY ARBITRATION.**

ESPN+ is a subscription video streaming service that offers a wide variety of prerecorded and live on-demand entertainment accessible via the ESPN+ website and ESPN mobile application (collectively, the "ESPN+ platform").  To access the ESPN+ services, Respondents required each Petitioner to agree to the ESPN+ SA, including its mandatory arbitration clause and class action waiver.  As Respondents admit, each of the Petitioners in this action have or had an ESPN+ subscription and viewed ESPN+ video content.[1]  Accordingly, all Petitioners have agreed to the Operative ESPN+ SA.

By its terms, the Operative ESPN+ SA governs "all disputes and claims between" the Petitioners and BAMTech, Disney+, and "related disputes involving The Walt Disney Company or its affiliates," including ESPN, "except disputes relating to the ownership or enforcement of intellectual property rights."  *See* Petition ¶ 4 and Ex. 2.  "Dispute" is defined to mean "any dispute, action, or other controversy, whether based on past, present, or future events," between Petitioners and Respondents "concerning the Disney+ Service, ESPN+ Service, or this Agreement, whether in contract, tort, warranty, statute, regulation, or other legal or equitable basis."  *Id*.  The "ESPN+ Service" includes "the ESPN+ website, application and associated content and services." *Id*.

The Operative ESPN+ SA has an extremely broad delegation clause under which the arbitrator has "the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this

---

[1]  As explained below, the Bellwether Agreement executed by the parties on August 10, 2023, contained an information exchange in which Respondents agreed to review their records to confirm whether each Petitioner had an ESPN+ subscription and watched video content via the ESPN+ platform.  Respondents provided the results to Petitioners' counsel prior to the second mediation, which took place on September 3, 2024.

contract, including, without limitation the arbitrability of any dispute, and any claim that all or any part of [the SA] are void or voidable." *Id.* ¶ 7. Consistent with the delegation clause in the Operative ESPN+ SA, JAMS rules of arbitration provide that the arbitrator "shall" decide "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration."[2] Thus, if the parties dispute the enforceability of the arbitration provision or how that provision should be applied, that dispute must itself be decided by an arbitrator. *Id.*

The Operative ESPN+ SA prohibits either party from bringing class proceedings and further requires that JAMS administer arbitration under the Streamlined Arbitration Rules and Procedures of JAMS ("Streamlined Rules"). *Id.*

**B.    AS PART OF THE PARTIES' MEDIATION EFFORTS, RESPONDENTS AGREE THAT THE OPERATIVE ESPN+ SA WILL GOVERN THE ARBITRATIONS**.

Between January 23, 2023 and July 28, 2023, each Petitioner provided notice of their VPPA claims against Respondents with JAMS as required by the Operative ESPN+ SA. *See* Petition ¶ 31 and Ex. 5. The notices described Petitioners' claims and indicated that if a resolution could not be reached, Petitioners would proceed to arbitration. The parties entered into a tolling agreement on March 17, 2023 ("Tolling Agreement") which tolled Petitioners' claims pending further negotiation. *See* Petition ¶ 32, Ex. 6 (3.17.23 Tolling Agreement). The parties also agreed to mediate before Judge Jay Gandhi (Ret.), then of JAMS, on May 2, 2023.

The Tolling Agreement included certain safeguards to protect Petitioners' claims, including a provision preventing Respondents from applying any changes they might make to the Operative ESPN+ SA to Petitioners:

---

[2]    JAMS    Streamlined    Arbitration    Rules    &    Procedures,    L,    Rule    8(b), https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8

**PETITIONERS' AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**
Case No. **2:25-cv-03861**

The Parties further agree that the agreement to mediate or failure to pursue a Tolled Claim during the pendency of this Agreement does not constitute an agreement as to the applicable version of the Disney/BAMTech Subscriber Agreement that might apply to the Tolled Claims. Tolling **Defendants will not enforce or retroactively apply any terms that materially alter, amend, or . . . impairs the Tolling Claimants' right to arbitrate the Tolled Claims in accordance with the Disney/BAMTech Subscriber Agreement (updated on September 27, 2022)**. If this Agreement expires or is terminated by any Party in accordance with Paragraphs One or Three above**, the Tolling Claimants, through their counsel Labaton Sucharow LLP, shall have 30 days from the Termination Date or expiration of the Tolling Period to . . . opt out of any amended terms placed into effect during the Tolling Period through letter from Tolling Claimants' counsel.** The Tolling Period shall not be included in calculating the opt out period for any amended Terms placed into effect during the pendency of this Agreement.

*Id.* (emphasis added).

After the May 2, 2023 mediation did not result in the resolution of any claims, 863 Petitioners commenced individual arbitration against Respondents before JAMS on June 22, 2023 ("JAMS Petitioners").   In response to the JAMS Petitioners' filing, Respondents requested, and the parties later agreed, to a limited bellwether proceeding governed by a separate agreement (the "Bellwether Agreement"). *See* Petition ¶ 32 and Ex. 6. The Bellwether Agreement stayed the remaining JAMS' Petitioners arbitrations pending the outcome of bellwether proceedings, provided for a stay of additional filings, and provided for another mediation following the conclusion of those bellwether proceedings. *Id.*   The Bellwether Agreement amended and modified the parties Tolling Agreement, ensuring that if Respondents made any changes to the Operative ESPN+ SA during the tolling period, they would not affect Petitioners' claims.   The parties further extended the tolling period through fourteen (14) days following the conclusion of the Second Mediation for all Petitioners, including the Petitioners who had not yet filed their demands with JAMS. *Id.*

The Bellwether Agreement also included an information exchange provision, under which Respondents agreed to search their records and confirm that each Petitioner was an ESPN+ subscriber and had viewed video content via ESPN+'s platform. *Id*. The Second Mediation took place on September 3, 2024. The parties undertook the information exchange process in advance of the mediation. Waisnor Dec., ¶ 4.

## C. RESPONDENTS MATERIALLY BREACHED THE OPERATIVE ESPN+ SA.

On September 3, 2024, the parties held the Second Mediation before Judge Jay C. Gandhi (Ret.), then of JAMS, but again, none of Petitioners' claims settled. On September 13, 2024, Respondents expressly refused to participate in the adjudication of "any of the [Petitioners'] claims before JAMS," including the JAMS' Petitioners' claims filed on June 22, 2023. *See* Petition ¶ 46 Ex. 13. On November 12, 2024, due to Respondents' refusal to participate, JAMS suspended administration of the remaining JAMS Petitioners' claims unless and until a court ordered Respondents to arbitrate before it. *See* Petition ¶ 52 and Ex. 19.

## D. RESPONDENTS HAVE SUCCESSFULLY COMPELLED TWO CLASS ACTIONS TO ARBITRATION UNDER SUBSTANTIALLY IDENTICAL ARBITRATION PROVISIONS.

On July 31, 2023, Respondent The Walt Disney Company successfully compelled to arbitration a putative class action lawsuit alleging violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act under the ESPN+ SA. *See Sadlock v. Walt Disney Co.*, No. 22-CV-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023). There, The Walt Disney Company successfully argued that the Operative ESPN+ SA "clearly and unmistakably" delegates to the arbitrator, not a court, the "exclusive authority" to resolve "any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this contract, including the arbitrability of any dispute. . . ." *See* Motion to Compel Arbitration and Stay Action,

*Sadlock*, ECF No. 18 at 8, 20-22.  The *Sadlock* court accepted The Walt Disney Company's argument and held that the "gateway issues of arbitrability have been delegated to the arbitrator."  *Sadlock*, 2023 WL 4869245, at *13.

Similarly, in *Swartz v. ESPN, Inc*., a putative class action in the Middle District of Pennsylvania, Respondent ESPN has moved to compel arbitration of substantially similar claims under the identical Arbitration Provision at issue here because the "[a]rbitration Provision specified that proceedings will be administered by JAMS pursuant to the JAMS Streamlined Arbitration Rules & Procedures."  *See* Brief in Support of ESPN, Inc.'s Motion to Compel Arbitration and Stay This Action, *Swartz v. ESPN, Inc*., No 1:22-cv-01523-KM (M.D. Pa Dec. 12, 2022), ECF No. 13, at 2; *see also* Petition ¶ 4 and Ex. 2 at ¶ 7.  Respondent ESPN further argued that the Arbitration Provision requires that the arbitrator, not the court, decides all disputes between the parties including any disputes about whether claims against any particular Disney affiliated entity are within the scope of the arbitration provision.  *Id.*

Finally, in *Antoine v. ESPN Enterprises, Inc.*, Respondent's affiliate ESPN Enterprises, Inc. ("ESPN Enterprises") successfully compelled another action alleging harm to customers based on the same wrongful practices alleged by Petitioners to arbitration.  *See* Order, *Antoine v. ESPN Enters., Inc.*, No. 2:23-cv-00887-JLB-NPM (M.D. Fla. Dec. 21, 2023), ECF No. 23.

## **LEGAL STANDARD**

In deciding a motion to compel under § 4 of the FAA, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  Thus, this motion to compel arbitration may be decided under a motion to dismiss standard, accepting as true all well-pled allegations, but may also be decided under a summary judgment standard if matters outside the pleadings are presented

appropriately.  *See Newbill v. CVS Caremark, LLC*, 683 F. Supp. 3d 1004, 1008 (D. Ariz. 2023) (analogizing to Fed. R. Civ. P. 12(d)'s conversion of a motion to dismiss to a motion for summary judgment).

Where, as here, an arbitration clause contains a provision stating that the FAA will govern its application, that "FAA choice-of-law provision in an arbitration agreement is enforceable." *Kim v. Tinder, Inc.*, No. CV 18-03093, 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-31 (9th Cir. 2015)); *see also* SA, ¶ 7.C ("The Federal Arbitration Act, 9 U.S.C. § 2 including its procedural provisions, and not state law, governs the interpretation and enforcement of this arbitration agreement.").  "The FAA provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. § 2), reflecting a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

Ordinarily, a court's role on a motion to compel arbitration is "limited to determining: (1) whether a valid agreement to arbitrate exists . . . and, if it does, (2) whether the agreement encompasses the dispute at issue." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016) (citation omitted).  However, parties may delegate questions about the scope of the arbitration agreement to an arbitrator through a delegation clause.  *Mohamed v. Uber Techs*, 848 F.3d 1201, 1209 (9th Cir. 2016).

**PETITIONERS' AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**
Case No. **2:25-cv-03861**

# ARGUMENT

**A.  THIS COURT SHOULD COMPEL ARBITRATION OF THE PARTIES' DISPUTE, INCLUDING ANY CHALLENGES TO ENFORCEABILITY AND SCOPRE OF THE OPERATIVE ESPN+ SA'S ARBITRATION PROVISION, TO JAMS.**

### 1.  The Operative ESPN+ SA Requires Respondents to Arbitrate Under JAMS Rules.

Where the parties have formed a valid agreement to arbitrate, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.,,* 207 F.3d at 1130. The FAA "requires courts 'rigorously' to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which arbitration will be conducted." *Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 506 (2018) (quoting *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013)). The court must compel Respondents to arbitrate according to the terms of its agreement with Petitioners, specifically including compliance with JAMS's procedural rules.

### 2.  The Parties Entered into a Valid Arbitration Agreement.

Petitioners entered into a valid arbitration agreement with Respondents when they agreed to the Arbitration Provision in the Operative ESPN+ SA.  Respondents have repeatedly stated that all ESPN+ subscribers agree to the SA when they set up an account. Petitioners have also filed a spreadsheet containing the information associated with each Petitioner's ESPN+ account (e.g., first and last name and email address), along with a declaration from each Petitioner attesting to their status as ESPN+ accountholders, use of the platforms, and agreement to arbitrate.  *See* Petition ¶ 1, Ex. 1 (List of Petitioners) and Waisnor Decl., filed concurrently herewith, at ¶¶3,4 and Exs. A, B.  As demonstrated, each Petitioner provided Respondents with personal information and subscribed to the ESPN+ services. In so doing, just like the plaintiffs in the *Antoine, Sadlock,* and *Swartz* class cases, they each entered into a valid and

15

enforceable arbitration agreement when they created their ESPN+ accounts and subscribed to ESPN+'s services. "'Courts around the country have recognized that [an] electronic "click" can suffice to signify the acceptance of a contract . . . .' Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of the agreement by clicking 'I agree.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34) (bracketed alteration in original); *see also Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)).

Moreover, a party resisting an otherwise facially valid arbitration agreement "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Chelsea Morgan Sec., Inc. v. Rappaport*, 3 F. Supp. 3d 791, 792 (C.D. Cal. 2014) citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); accord *Smith v. ComputerTraining.com Inc.*, 772 F. Supp. 2d 850, 855 (E.D. Mich. 2011) ("The party opposing arbitration has the burden to show that the agreement is not enforceable"). Because Petitioners were required to agree to the ESPN+ SA to create an ESPN+ account and subscribe to the ESPN+ paid subscription, it is undisputed that Respondents entered into a valid arbitration agreement with each Petitioner, as each Petitioner has confirmed through a declaration. *See* Waisnor Decl., at ¶¶3,4 and Exs. A, B. Accordingly, this Court should find that Petitioners assented to the Operative ESPN+ SA.

### 3. The Arbitration Agreement Covers the Present Dispute.

Petitioners' claims also plainly fall within the scope of the Arbitration Provision in the Operative ESPN+ SA. By its terms, the Operative ESPN+ SA applies to "any dispute, action, or other controversy, whether based on past, present, or future events," between Petitioners and Respondents "concerning the Disney+ Service, ESPN+ Service, or this Agreement, whether in contract, tort, warranty, statute, regulation, or

other legal or equitable basis."[3] *See* Petition ¶ 4 and Ex. 2. ¶ 7  The Supreme Court has instructed that, "[i]n determining the scope of an arbitration agreement, 'there is a presumption of arbitrability'" and "[d]oubts should be resolved in favor of coverage." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 314 (2010) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986)).

Here, Petitioners allege that Respondents violated the VPPA, a consumer privacy statute falling outside the narrow intellectual property carveout in the Operative ESPN+ SA.  The Arbitration Provision here requires binding arbitration of "any dispute, action, or other controversy, whether based on past, present, or future events," between the customer and the Respondents "concerning the Disney+ Service, ESPN+ Service, or this Agreement, whether in contract, tort, warranty, statute, regulation, or other legal or equitable basis." *Id*. This type of language has repeatedly been found to be "of the broadest nature" encompassing all disputes between the parties. *Black v. JP Morgan Chase & Co.*, No. 10–848, 2011 WL 3940236, at *6 (W.D. Pa. Aug. 25, 2011); *see also AT&T Mobility LLC*, 563 U.S. at 336 (enforcing arbitration agreement governing "all" disputes); *Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz*, 1:13–CV–02449, 2013 WL 6185604, at *4 (M.D. Pa. Nov. 25, 2013) (same conclusion). Therefore, the Arbitration Provision in the Operative ESPN+ SA covers the present disputes.

### 4. The SA's Broad Delegation Clause Requires Nearly All of Respondents' Purported Objections to Arbitrability to be Determined by JAMS.

The Operative ESPN+ SA delegates all disputes about the enforceability of the ESPN+ SA and questions as to whether the scope of the arbitration clause encompasses the claims at issue to arbitration.  *See* Petition ¶ 4 and Ex. 2. ¶ 7 ("arbitrator has the exclusive authority to resolve any dispute relating to the interpretation, applicability or

---

[3] The ESPN+ SA also includes a carveout for intellectual property claims, inapplicable to Petitioners' claims here.

enforceability of these terms or the formation of this contract, including, without limitation the arbitrability of any dispute, and any claim that all or any part of this Agreement are void or voidable.").

"When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U. S. 79, 83-85 (2002)). Not only does the Operative ESPN+ SA itself contain such a broad delegation of arbitrability, but also the JAMS rules incorporated into the Arbitration Provision in the Operative ESPN+ SA, which provide that the arbitrator should decide issues of arbitrability, including the "scope" of the arbitration agreement. *See* JAMS Streamlined Rules (arbitrator "shall" decide "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought"); *see also Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) (quoting *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017)) ("[B]y incorporating the JAMS Rules into the [a]greement, [the parties] evidenced a clear and unmistakable intent to delegate questions of arbitrability to an arbitrator.").

Here, any potential questions as to whether Petitioners' claims are within the scope of the Operative ESPN+ SA or whether any of the Respondents are not properly parties to the arbitration are delegated in the first instance to the arbitrators to decide. These include Respondents' anticipated arguments that the Operative ESPN+ SA is no longer enforceable in light of any purported amendment, or that Petitioners failed to meet a condition precedent to arbitration. *See, e.g., Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84–85 (2002) ("[C]onditions precedent to an obligation to arbitrate" are

1  "presumptively for the arbitrator, not the judge."); *see also, e.g., BG Grp. PLC v.*
2  *Republic of Arg.,* 572 U.S. 25, 34-35 (2014) (same).

3      Therefore, if this Court finds a valid arbitration agreement exists, it must compel
4  arbitration. *See Patrick*, 93 F.4th at 480-81 (delegation clause removes other questions
5  from the court's purview); 9 U.S.C. § 4.

6          **5.    The SA Encompasses Petitioners' Claims Against All
7                  Respondents.**

8      The Operative ESPN+ SA expressly provides that Petitioners and ESPN+ "agree
9  to arbitrate . . . all disputes between you and us (**including any related disputes**
10 **involving The Walt Disney Company or its affiliates**)"  *See* Petition ¶ 4 and Ex. 2. ¶
11 7 (emphasis added).  As relevant here, Petitioners will allege in the arbitrations they
12 seek to compel that *all* respondents, acting together, embedded various tracking
13 technologies into the ESPN+ and the ESPN.com website.  This is for good reason –
14 The Walt Disney Corporation collectively oversees all of the other respondents, these
15 entities collectively operate the platforms alleged to have harmed Petitioners, through
16 multi-entity arrangements crossing between corporate affiliates.

17     Where, as here, "the relationship among the parties, the contracts they signed . .
18 . , and the issues that had arisen among them that is to be resolved are intertwined with
19 the agreement," either by the express text of the agreement or the surrounding
20 circumstances arbitration against affiliate entities of the signatory entity is routinely
21 compelled.  *Ragone v. Atl. Video*, 595 F.3d 115, 126-27 (2d Cir. 2010) (internal
22 quotation marks omitted) (quoting *Chocktaw Generation Ltd. v. Am. Home Assurance*
23 *Co.,* 271 F.3d 403, 406 (2d Cir. 2001)) (compelling arbitration of claim against ESPN
24 despite no direct contract between ESPN and plaintiff because the claims "rely on the
25 concerted actions of both defendants and are therefore substantially interdependent").

26     In *Rangone*, the Second Circuit found that the plaintiff's allegations, detailing
27 sexual harassment the plaintiff suffered at the hands of, and under the supervision of,
28 personnel working both for her direct contractual employer AVI and for ESPN, her

1    employer's client, were "factually intertwined."  595 F.3d at 128.  It therefore held that

2    her claims against ESPN must be arbitrated under the clause in her AVI employment

3    agreement, notwithstanding that ESPN was not mentioned in that agreement and was

4    not a signatory to it.  *Id.* at 127-28.

5         The facts here exceed the standard set in *Rangone.*  Unlike the agreement in that

6    case, the ESPN+ agreement here *does* expressly provide that it applies to "related

7    disputes involving The Walt Disney Company or its affiliates."  Further, as in *Rangone*,

8    the alleged conduct of the entities in question is inextricably intertwined.  Both ESPN+

9    and ESPN, Inc. host videos available to the public on the "espn.com" website, and

10   various technologies violating the VPPA, including the Meta tracking Pixel, are

11   embedded on that website.  Claimant alleges that the Respondents, acting in concert

12   and under the direction of their mutual parent the Walt Disney Company, embedded

13   those technologies into the ESPN.com website.  There is no basis in either the relevant

14   agreement or the Demand to conclude that The Walt Disney Company's or ESPN,

15   Inc.'s alleged conduct – i.e., *posting video content and embedding tracking technology*

16   *into the same website and apps as ESPN+* – is not "factually intertwined" with the

17   alleged conduct of ESPN+.

18        This also comports with the commonsense principle that, in applying arbitration

19   clauses to non-signatories, judicial "reasoning has tended to focus upon whether the

20   non-signatory asserting estoppel is a subsidiary, affiliate, agent, employee or other

21   related business entity of a signatory to the agreement to arbitrate."  *Holzer v.*

22   *Mondadori*, 12 Civ. 5234, 2013 U.S. Dist. LEXIS 37168, at *43 (S.D.N.Y. Mar. 14,

23   2013); *see also, e.g., Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 209 (2d. Cir.

24   2005) (arbitration clause between plaintiff and defendant subsidiary applied to non-

25   signatory corporate parent); *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 280

26   (arbitration clause between plaintiff and defendant applied to additional non-signatory

27

28

subsidiary of mutual corporate parent).  Accordingly, arbitration should be compelled against all Respondents.

## B. RESPONDENTS HAVE FAILED TO COMPLY WITH THE OPERATIVE ESPN+ SA AND CONTINUE TO REFUSE TO ARBITRATE

As set forth above, Respondents have expressly refused to proceed to adjudication of Petitioners' claims before JAMS, and JAMS has stated it cannot administer those disputes absent a court order compelling Respondents to arbitrate before it.  Petitioners are therefore "aggrieved by the alleged failure, neglect, or refusal of [Respondents] to arbitrate under a written agreement for arbitration."  9 U.S.C. § 4. Respondents' conduct is both outright repudiation as to the JAMS Petitioners, and an anticipatory breach of the Operative ESPN+ SA as to all other Petitioners.  *See Codding v. Pearson Educ., Inc.*, 842 F App'x 70, 72 (9th Cir. 2021) (quoting *Guerrieri v. Severini*, 330 P.2d 635, 638 (Cal. 1958)) ("An anticipatory breach of contract occurs on the part of one of the parties to the [contract] when [it] positively repudiates the contract by acts or statements indicating that [it] will not or cannot substantially perform essential terms [of the contract]."); *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l*, 370 U.S. 254, 263 n.10 (1962) (recognizing repudiation of arbitration provisions); *see also Grunwald-Marx, Inc. v. L.A. Joint Bd. Amalgamated Clothing Workers of Am.*, 192 Cal. App. 2d 268, 280 (Cal. Ct. App. 1961) (a party's refusal "to submit the issue to the arbiters, contending it was not arbitrable at all . . . constituted an unequivocal repudiation of the arbitration clause"). On this record, the Court may find a refusal to arbitrate.  Respondents refused to honor their contract with Petitioners to arbitrate Petitioners' claims before JAMS.  *See Wilson v. Cracker Barrel Old Country Store, Inc*., No. 2:22-CV-195, 2023 WL 10476032, at *6 (N.D. Ga. Jan. 30, 2023) (holding that a communicated intention not to arbitrate is enough to establish a refusal to arbitrate).  Accordingly, Respondents have refused to

---

**PETITIONERS' AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**
Case No. **2:25-cv-03861**

arbitrate "in accordance with the terms of the agreement," and an order compelling them to arbitrate is appropriate. 9 U.S.C. §§ 3-4.

### C. RESPONDENTS' MATERIAL BREACH OF THE OPERATIVE ESPN+ SA ENTITLES PETITIONERS TO ATTORNEYS' FEES UNDER CALIFORINA AND RHODE ISLAND LAW

Under the laws of California, where Respondents Disney Platform Distribution, Inc. and The Walt Disney Company are headquartered, and where 592 Petitioners reside, when a "consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date the drafting party is in material breach of the arbitration agreement [and] is in default of the arbitration." Cal. Code Civ. Proc. § 1281.97(a)(1). The laws of the state of Rhode Island, where 10 Petitioners reside, contain a nearly identical requirement. RI Gen L. § 10-3-23(a)(1).

ESPN+ is the drafting party of Operative ESPN+ SA as it is "the company or business that included a predispute arbitration provision in a contract with a consumer." Cal. Code Civ. Proc. § 1280(e). Petitioners' demands for arbitration are consumer arbitration claims because Petitioners are consumers and they seek to enforce consumer statutes. The Operative ESPN+ SA incorporates the JAMS Streamlined Rules by reference, and those rules require Respondents to pay all arbitral fees other than an initial filing fee. Operative ESPN+ SA at ¶7; Petition ¶¶23, 28-29.

By refusing to arbitrate with Petitioners, Respondents breached the statute. California and Rhode Island law provide specific remedies for a drafting party's material breach of an arbitration agreement. *See* Cal. Code Civ. Proc. § 1281.97; RI Gen. L. §10-3-23. A consumer aggrieved by a respondent's breach of a Cal. Code Civ. Proc. § 1281.97(a)(1) or RI Gen. L. § 10-3-23 may "[c]ompel arbitration in which the

drafting party shall pay reasonable attorney's fees and costs related to the arbitration." Cal. Code. Civ. P § 1281.97(b)(2); RI Gen. L. § 10-3-23(b)(2).  Additionally, a court addressing such a refusal to arbitrate by a drafting party "shall" impose monetary sanctions against the breaching party for the reasonable expenses incurred because of the breach, "including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach."  Cal. Code Civ. Proc. § 1281.99(a); RI Gen. L. § 10-3-25(a).

Accordingly, Petitioners respectfully request that the Court order Respondents to arbitrate each Petitioner's claims and impose monetary sanctions under Cal. Code Civ. Proc. §§ 1281.97 and 1281.99 and RI Gen. L. §§10-3-23 and 10-3-25. Respondents are *required* to pay Petitioners' reasonable attorneys' fees and costs associated with bringing this petition and motion to compel arbitration.

California courts have repeatedly confirmed that Sections 1281.97–99 are strictly applied and leave no discretion to excuse non-payment, regardless of the breaching party's reasons. *See Espinoza v. Superior Court*, 83 Cal. App. 5th 761, 775–77 (2022); *Williams v. West Coast Hospitals, Inc.*, 86 Cal. App. 5th 1054, 1074–75 (2022); *De Leon v. Juanita's Foods*, 85 Cal. App. 5th 740, 749 (2022).  Sanctions are mandatory.  While there are fewer cases involving the Rhode Island statute, the language of the statute is nearly identical.  *Compare* Cal. Code Civ. Proc. §§ 1281.97 and 1281.99 and RI Gen. L. §§10-3-23 and 10-3-25.

## CONCLUSION

For the foregoing reasons, Petitioners' claims, as well as any defenses Respondents may have to the enforceability or applicability of Petitioners' arbitration agreements, as well as the arbitrability of Petitioners' claims or their merits, should be compelled to arbitration and this Court should impose sanctions in the form of attorneys fees' on Respondents and retain jurisdiction to oversee further proceedings in aid of arbitration.

DATED: July 1, 2025 **LABATON KELLER SUCHAROW LLP**

/s/ *Jonathan Waisnor*
Jonathan Waisnor (CA Bar No. 345801)
James Fee (Admitted *Pro Hac Vice*)
Alexander Schlow (Admitted *Pro Hac Vice*)
Stephen Kenny (Admitted *Pro Hac Vice*)
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700
Fax: (212) 907-7039
jwaisnor@labaton.com
jfee@labaton.com
aschlow@labaton.com
skenny@labaton.com

*Counsel for Petitioners*

**PETITIONERS' AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**
Case No. **2:25-cv-03861**