1  LABATON KELLER SUCHAROW LLP
   Jonathan Waisnor (CA 345801)
2  jwaisnor@labaton.com
   James Fee (admitted *Pro Hac Vice*)
3  jfee@labaton.com
   Alexander Schlow (admitted *Pro Hac Vice*)
4  aschlow@labaton.com
   Stephen Kenny (admitted *Pro Hac Vice*)
5  skenny@labaton.com
   140 Broadway, Floor 34
6  New York, NY 10005
   Telephone: 212-907-0700
7  Facsimile: 212-818-0477

8  *Counsel for Petitioners*

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11 | Matt Allen and 3,552 Other | Case No. 2:25-cv-03861-MWC-KS
   | Individuals,
12 |                            | **PETITIONERS' REPLY IN SUPPORT**
   |          Petitioners,      | **OF THE AMENDED PETITION AND**
13 |                            | **OPPOSITION TO THE CROSS-**
   |        vs.                 | **PETITION**
14 |                            |
15 | BAMTECH, LLC; DISNEY       | Judge:      Hon. Michelle Williams Court
   | PLATFORM DISTRIBUTION,
16 | INC. (d/b/a Disney Streaming | Am. Petition Filed: July 1, 2025
   | Services, LLC); ESPN, INC.; and | Am. Motion Filed: July 1, 2025
17 | THE WALT DISNEY            | Opp. & Cross Pet. Filed: Aug. 22, 2025
   | COMPANY,                   | Current Opp. & Reply Date: Sep. 19, 2025
18 |          Respondents.      | Current Cross Pet. Reply Date: Oct. 3, 2025
   |                            | Current Hearing Date: October 17, 2025,
19 |                            | Current Hearing Time: 1:30 p.m.
20 |                            | Filed concurrently: [Proposed] Order

21

22

23

24

25

26

27

28

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

1

## TABLE OF CONTENTS

2    INTRODUCTION ...................................................................................................1

3    FACTUAL BACKGROUND AND PROCEDURAL HISTORY.............................2

4    ARGUMENT.........................................................................................................5

5    I.     THE BELLWETHER AND TOLLING AGREEMENTS, AND THE
       PARTIES' SUBSEQUENT CONDUCT, PRESERVED
6      CLAIMANTS' RIGHT TO ARBITRATION UNDER THE 2022
       AGREEMENT ..............................................................................................5

7

8    II.    UNDER RESPONDENTS' CITED DELEGATION PRINCIPLES,
       THE APPROPRIATE FORUM TO DETERMINE ALL OTHER
9      ISSUES, INCLUDING THRESHOLD ARBITRABILITY ISSUES, IS
       JAMS ............................................................................................................8

10   III.   EVEN IN THE ABSENCE OF THE TOLLING AND
       BELLWETHER AGREEMENTS, RESPONDENTS WOULD BE
11     PROHIBITED FROM UNILATERALLY AMENDING THE
       ARBITRATION CLAUSE AS TO PETITIONERS ....................................11
12

13   IV.    RESPONDENTS' CROSS-PETITION WOULD HAVE TO BE
       DENIED EVEN IN THE ABSENCE OF THE 2022 AGREEMENT,
14     BECAUSE RESPONDENTS' 2024 AGREEMENT, AND THE
       METHOD OF ITS IMPOSITION UPON PETITIONERS, IS
15     UNCONSCIONABLE ..................................................................................13

16         A.    The 2024 Agreement Is Procedurally Unconscionable. ....................13

17         B.    The 2024 Agreement is Substantively Unconscionable ....................15

18   V.     RESPONDENTS' ARGUMENT THAT THEIR AFFILIATED
       ENTITIES NOT SPECIFICALLY NAMED IN THE 2022
19     AGREEMENT ARE NOT BOUND THEREBY IS CONTRARY TO
       LAW AND ITS OWN POSITION IN PRIOR LITIGATION ....................19

20   VI.    RESPONDENTS' PREEMPTIVE REPUDIATION OF ANY
       OBLIGATION TO ARBITRATE BEFORE JAMS UNDOUBTEDLY
21     CONSTITUTES A "REFUS[AL] TO ARBITRATE UNDER A
       WRITTEN AGREEMENT FOR ARBITRATION" ....................................22
22

23   VII.   RESPONDENTS' REMAINING ARGUMENTS about THE TIMING
       AND NATURE OF PETITIONERS' USE OF THEIR PLATFORMS
24     ARE MERITS ISSUES DELEGATED TO THE ARBITRATOR ...............25

25   CONCLUSION....................................................................................................25

26

27

28

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

i

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abernathy v. Doordash, Inc.*,
  438 F.Supp. 3d 1062 (N.D. Cal. 2020)..................................................9

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  6 P.3d 669 (Cal. 2000).........................................................13

*Astra Oil Co. v. Rover Navigation, Ltd.*,
  344 F.3d 276 (2d Cir. 2003).................................................21

*Bates v. Sephora USA, Inc.*,
  No. CPF-24-518617 (Cal. Super. Ct. S.F. Cnty. Oct. 3, 2024)...........13

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
  2011 WL 6014438 (N.D. Cal. Dec. 2, 2011) ................................24

*Blair v. Rent-A-Ctr., Inc.*,
  928 F.3d 819 (9th Cir. 2019)..................................................17

*Chavarria v. Ralphs Grocery Co.*,
  733 F.3d 916 (9th Cir. 2013)..................................................18

*In re Cintas Corp. Overtime Pay Arbitration Litigation*,
  2007 WL 137149 (N.D. Cal. Jan. 12, 2007) ........................23, 24

*Cobb v. Ironwood Country Club*,
  233 Cal. App. 4th 960 (Cal. Ct. App. 2015) ..............................11

*Codding v. Pearson Educ., Inc.*,
  842 F. App'x 70 (9th Cir. 2021)..............................................23

*Dunham v. Env't Chem. Corp.*,
  No. 06-3389, 2006 WL 2374703 (N.D. Cal. Aug. 16, 2006) ..............16

*Espinoza v. C&L Refrigeration Corp.*,
  2014 WL 12597140 (C.D. Cal. Dec. 10, 2014) ........................12, 19

*Flores v. Transamerica HomeFirst, Inc.*,
  93 Cal. App. 4th 846 (Cal. Ct. App. 2001)..............................13, 14

*Green Tree Fin. Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000) ..............................................................18

*Harper v. Ultimo*,
  113 Cal. App. 4th 1402 (Cal. Ct. App. 2003) ..............................14

*Heckman v. Live Nation Entm't, Inc.*,
  120 F.4th 670 (9th Cir. 2024).............................................13, 15

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

ii

*Heckman v. Live Nation Entm't, Inc.*,
   686 F. Supp. 3d 939 (C.D. Cal. 2023), *aff'd* 120 F.4th 670 (9th Cir.
   2024) ......................................................................................................... 14, 15

*Keebaugh v. Warner Bros. Entm't, Inc.*,
   100 F.4th 1005 (9th Cir. 2024) ................................................................... 17

*Kim v. Allison*,
   87 F.4th 994 (9th Cir. 2023) ................................................................. 12, 24

*Kohn Law Grp., Inc. v. Jacobs*,
   2018 WL 6118550 (C.D. Cal. Aug. 7, 2018) ........................................ 12, 19

*Lim v. TForce Logistics, LLC*,
   8 F.4th 992 (9th Cir. 2021) ......................................................................... 15

*Little v. Auto Stiegler, Inc.*,
   29 Cal. 4th 1064 (Cal. 2003) ...................................................................... 15

*MacClelland v. Cellco P'ship*,
   609 F. Supp. 3d 1024 (N.D. Cal. 2022) ................................... 15, 16, 17, 19

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) .................................................................................. 17

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) .................................................................... 21

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) (en banc) .................................................... 14

*Nyulassy v. Lockheed Martin Corp.*,
   120 Cal. App. 4th 1267 (Cal. Ct. App. 2004) ...................................... 15, 16

*OTO, L.L.C. v. Kho*,
   447 P.3d 680 (Cal. 2019) ............................................................................ 13

*Patrick v. Running Warehouse, LLC*,
   93 F.4th 468 (9th Cir. 2024) ....................................................................... 17

*Patterson v. ITT Consumer Fin. Corp.*,
   14 Cal. App. 4th 1659 (Cal. Ct. App. 1993) ........................................ 13, 14

*Peleg v. Neiman Marcus Grp., Inc.*,
   204 Cal. App. 4th 1425 (Cal. Ct. App. 2012) ............................................ 11

*Ragone v. Atlantic Video*,
   595 F.3d 115 (2d Cir. 2010) ....................................................................... 21

*Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*,
   325 F.3d 54 (1st Cir. 2003) ......................................................................... 21

*Sadlock v. The Walt Disney Co.*,
   No. 3:22-cv-09155-EMC, ECF No. 18 (N.D. Cal. July 31, 2023) ................. 11

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (Cal. 2015) ................................................................. 15

*Suski v. Coinbase, Inc.*,
  602 U.S. 143 (2024) ............................................................................. 7

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002) .............................................................. 25

*In re Tower Park Props., LLC*,
  2013 WL 12148276 (C.D. Cal. Nov. 21, 2013) ................................. 22

*Turlock Irrigation Dist. v. FERC*,
  903 F.3d 862 (9th Cir. 2018) ................................................................ 8

*Uber Tech., Inc. v. Am. Arbitration Assn., Inc.*,
  204 A.D.3d 506 (N.Y. App. Div. 2022) ............................................... 9

*Valve Corp. v. Bucher L. PLLC*,
  571 P.3d 312 (Wash. Ct. App. 2025) .................................................... 9

*Vogel v. Vogel*,
  2014 WL 12575815 (C.D. Cal. June 23, 2014) ............................. 12, 19

*Wilson v. Cracker Barrel Old Country Store, Inc.*,
  2023 WL 10476032 (N.D. Ga. Jan. 30, 2023) ................................... 24

**Statutes**

9 U.S.C. § 4 .......................................................................................... 23

Cal. Code. Civ. P. §1281.97 ................................................................... 3

**Other Authorities**

*Block Restaurant Allergy Death Lawsuit*, The Guardian (Aug. 15,
  2024), *available at*
  https://www.theguardian.com/film/article/2024/aug/15/disney-
  wrongful-death-lawsuit-dismissal ...................................................... 20

*Disney Backtracks On Request To Toss Wrongful Death Suit Over
  Disney+ Agreement*, NPR (Aug. 20, 2024), *available at*
  https://www.npr.org/2024/08/14/nx-s1-5074830/disney-wrongful-
  death-lawsuit-disney ........................................................................... 20

*JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute
  Clauses Minimum Standards of Procedural Fairness* (May 1,
  2024), *available at* https://www.jamsadr.com/consumer-minimum-
  standards/ ............................................................................................ 18

*JAMS Streamlined Arbitration Rules & Procedures*, Rule 8(b),
  *available at* https://www.jamsadr.com/rules-streamlinedarbitration
  (last visited Feb. 9, 2024) ................................................................... 20

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

# INTRODUCTION

Respondents'[1] opposition to Petitioners' motion is their latest attempt to avoid their responsibilities under multiple contracts, including the contract of adhesion they drafted and imposed on Claimants well before these disputes arose and that they have repeatedly argued applies to VPPA claims.  It focuses on issues that are delegated to arbitrators or procedural history that is not relevant to the narrow issues before the Court.  Respondents do not meaningfully contest formation of the 2022 Agreement, and their Cross-Petition confirms that Petitioners are their customers.  That agreement was reaffirmed by the parties after the dispute arose.  Respondents also agree there is a broad delegation clause. This means they must direct their arbitrability arguments, including their arguments about which Disney entities are proper parties to the arbitration, to JAMS arbitrators.  Accordingly, the Court should grant Petitions' motion and deny Respondents' Cross-Petition.

Respondents largely accuse Claimants of trying to exploit Respondents' own arbitration agreement and the FAA to force a coercive settlement.  This is irrelevant and not supported by anything in the record. The record shows that instead of immediately filing arbitrations with JAMS in early 2023, Claimants agreed to two mediations, a bellwether process, and then a third mediation. Respondents lost two of the seven bellwethers that were arbitrated to a final award and were not settled or withdrawn for idiosyncratic reasons.  Across the seven completed bellwethers, Claimants received an average award of nearly $7,500.  Respondents may not like what this means across thousands of claimants, but the FAA does not permit parties

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Claimants' Amended Petition to Compel Arbitration (the "Petition," ECF No. 27) and Amended Notice of Motion and Motion to Compel Arbitration (the "Motion," ECF No. 28); References to "Resp. Br." and "Cross-Petition" are to Respondents' Opposition to First Amended Petition/Motion to Compel Arbitration and Cross-Petition to Compel Arbitration and to Stay (ECF No. 34); "2022 Agreement" refer to the Petition Ex. 2, Operative ESPN+ SA and "2024 Agreement" are to the Petition Ex. 3, Amended ESPN+ SA. Unless otherwise noted, all emphasis is added, and internal quotation marks and citations are omitted.

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

to decline to arbitrate because they do not like how the arbitrations might play out. Instead, Respondents are trying to exert procedural leverage by making Claimants pay unconscionable fees (ADR Services) or imposing new procedural mechanisms (NAM) to further delay assignment of merits arbitrators.

Finally, while courts acknowledge that arbitration can be quite expensive, they routinely dismiss cost-based arguments and hold companies to their agreements. Indeed, arbitration is not meaningfully less expensive under either of Respondents' preferred arbitration fora. The culprit is not Claimants or their counsel, but Respondents' arbitration agreements, which bar class actions, class arbitration, or consolidation, and require each claim to be arbitrated individually.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The relevant facts are set forth in Petitioners' Petition and Motion, to which the Court is respectfully referred. Indeed, Respondents spend a significant portion of their briefing spelling out a procedural history of the case that is largely not relevant to the very limited scope of this Court's review on a motion to compel arbitration. Claimants will briefly address certain incomplete or inaccurate assertions of fact made by Respondents in their Cross-Petition, as set forth below.

Respondents' selective retelling of the parties' prior bellwether process is misleading. Respondents' claim they succeeded on "98%" of the arbitrated claims is nonsensical – there were ten (10) bellwether proceedings, only seven of which were arbitrated to a final decision. *See* Cross-Petition 10; Waisnor Opposition Decl. ¶2. In the bellwether proceedings, two bellwether Claimants prevailed on claims asserted against Respondents. Waisnor Opposition Decl. ¶2. Respondents prevailed in five arbitrations, and two were settled before the issuance of a final award.

LABATON KELLER SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

2

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

1  Waisnor Opposition Decl. ¶2.   Overall, the average final award in *all of the*
2  *bellwethers that were arbitrated to a final award* was $7,474.86.[2]

3        Aside from the two bellwethers that settled, the tenth bellwether arbitration
4  was voluntarily withdrawn, but not for the reasons the Blavin Declaration
5  misleadingly implies. Waisnor Opposition Decl. ¶¶2-3. Unrelated to the claimant's
6  deposition, this final bellwether arbitration was delayed for several months because
7  Respondents and their affiliates failed to pay the required arbitral fees, which was
8  found to be a material breach of the parties' arbitration agreement subjecting
9  Respondents to sanctions under Cal. Code. Civ. P. §1281.97. Waisnor Opposition
10  Decl. ¶5. During those intervening months, the claimant in question was dealing with
11  personal issues and ultimately decided not to pursue their arbitration for personal
12  reasons and withdrew the claim with prejudice. Waisnor Opposition Decl. ¶3.

13        Respondents' 98% number makes very little sense.   Instead, it appears to
14  include the results of claims asserted against other Disney affiliate entities who are
15  not parties to this action and to count dozens of alleged specific disclosures of
16  individuals' viewing information to assorted third parties as separate claims. Yet, the
17  parties agreed that the bellwether claimants would seek $2,500 statutory damages for
18  a single disclosure under the VPPA, no matter how many disclosures were proven.
19  Petition Ex. 10, ¶3. In other words, proof of a single violation resulted in the same
20  recovery for a claimant as proof of a dozen or more violations during the bellwethers.

21        Respondents' version of events after the bellwether process is similarly
22  incomplete. Respondents claim that "JAMS declined to administer [Petitioners']
23  claims" (Cross-Petition 10), but fail to mention that JAMS's decision not to
24  administer came only after *Respondents preemptively refused to arbitrate before*
25  *JAMS* with respect to all clients of undersigned counsel. *See* Petition ¶51, Ex. 18.

---

[2] *See* Waisnor Opposition Decl. ¶2 (two statutory damages awards of $2,500, one
award of attorneys fees of $44,477.61, one award of costs of $2,846.40 for a total
award of $52,324.01, across 7 bellwethers that were arbitrated to a final award).

28

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

JAMS specifically noted that it *would* "resume administration" of Petitioners' claims "[i]f . . . a court orders the parties to proceed here[.]" *See* Petition ¶52, Ex. 19.   As for Petitioners who did not file in JAMS, on September 13, 2024, Respondents informed counsel that "our clients will not engage in the arbitration process with any of your clients before JAMS." Petition, Ex. 13.

Respondents' leave out several other relevant details. First, Respondents assert, without support, that "none of the June 2023 Claimants had participated in the prerequisite dispute resolution process under the then-operative subscriber agreements." Blavin Decl. ¶6. However, the enforceability of those pre-arbitration provisions and Respondents' position on the meaning of those provisions remain in dispute. Further, undersigned counsel and Respondents' counsel engaged in *months* of detailed negotiations, including formal mediation and two separate tolling agreements, before proceeding to the bellwether arbitrations.  *See* Petition ¶¶31-37.

Respondents make misleading claims about the differences in fee structures between JAMS and their preferred fora, ADR Services and NAM. Respondents note that their initial filing fee obligation before NAM of $1,750 per claimant is higher than the initial filing fee of approximately $300 per claimant before the other organizations. *See* Cross-Petition 10. First, Respondents' fee obligations before JAMS would not be very different from those before NAM. Although NAM charges businesses like ESPN+ an *initial* administrative fee of $275-$300 per claimant, it *also* charges a "panel preparation fee" of between $400 and $525 per claimant, and a "final admin fee" of $400-$525, resulting in a total administrative fee obligation of between $1,075 and $1,325 per claimant, a similar total to the fees imposed by JAMS. Waisnor Opposition Decl. ¶7, Ex. A at 2. Further, all three providers separately charge an hourly rate for arbitrator time, which Respondents would be solely responsible for, and which would likely far exceed the initial administrative costs in each complete merits arbitration and the statutory award under the VPPA. *See*

*Frequently       Asked       Questions*,       ADR       Services       Inc.,
https://www.adrservices.com/services-2/faq/ ("Generally, rates for neutrals run
between $350 and $1,000 per hour, depending on the neutral selected."); Waisnor
Opposition Decl. ¶7, Ex. A at 2 (NAM Fee Schedule indicating neutral fees of
$600/hour).

More glaringly, Respondents fail to mention that Petitioners' initial fee
obligations before ADR Services would be *more than twice as high as JAMS*, and
*nearly twice Respondents' own initial fee obligations in that forum*. *See* Waisnor
Opposition Decl. ¶8, Ex. B (ADR Services fee schedule indicating claimant
obligations of $545, compared to $295 for respondents). Such company-friendly fee
structures that impose financial initiation requirements on Claimants substantially
higher than normal court fees are routinely struck down. Regardless, that
Respondents prefer ADR Services' fee structure is no reason why they should not be
compelled to arbitrate before JAMS, the forum in the 2022 Agreement, and to which
they are currently compelling other VPPA claims to arbitration.

## ARGUMENT

**I.    THE BELLWETHER AND TOLLING AGREEMENTS, AND THE PARTIES' SUBSEQUENT CONDUCT, PRESERVED CLAIMANTS' RIGHT TO ARBITRATE UNDER THE 2022 AGREEMENT**

Respondents' reliance on the 2024 Agreement, both in opposition to the
Petition and in support of their own cross-petition, is misplaced. Respondents
*expressly agreed that the 2024 Agreement would not apply to Petitioners.*
Specifically, Respondents gave each Petitioner, through the Tolling Agreement, the
option to exempt accrued claims from changes to the arbitration procedures:

> The Parties further agree that the agreement to mediate or failure to
> pursue a Tolled Claim during the pendency of this Agreement does not
> constitute an agreement as to the applicable version of the
> Disney/BAMTech Subscriber Agreement that might apply to the Tolled
> Claims. ***Tolling Defendants will not enforce or retroactively apply any
> terms that materially alter, amend, or change the or impairs the
> Tolling Claimants' right to arbitrate the Tolled Claims in accordance***

*with the Disney/BAMTech Subscriber Agreement (updated on September 27, 2022)*. If this Agreement expires or is terminated by any Party in accordance with Paragraphs One or Three above, *the Tolling Claimants, through their counsel Labaton Sucharow LLP, shall have 30 days from the Termination Date or expiration of the Tolling Period to in order to opt out of any amended terms placed into effect during the Tolling Period through letter from Tolling Claimants' counsel.* The Tolling Period shall not be included in calculating the opt out period for any amended Terms placed into effect during the pendency of this Agreement.

Petition Ex. 6, ¶10. The Bellwether Agreement amended and modified this provision of the Tolling Agreement by extending the end date of the tolling period "to and through 14 days following the conclusion of the Second Mediation." Petition Ex. 10, at ¶8(b). It also prohibited the unilateral termination of the Tolling Agreement before completion of the Second Mediation. Petition Ex. 10, at ¶8(c).

Respondents cherry-pick language from the Tolling Agreement to argue that this applies to amendments made "during the pendency of the Tolling Agreement," (Cross-Petition at 15-16), but they ignore the remainder of paragraph 10 of the Tolling Agreement, which provides that "Tolling Defendants will not enforce or retroactively apply *any terms*" that materially amend the 2022 Agreement, without regard to the timing of that amendment. Petition Ex. 6, ¶10. Notably, this agreement extends to "the Tolling Claimants' right to arbitrate" under the 2022 Agreement, which is defined to include *all* Petitioners, regardless of if they had previously initiated arbitration.[3]

The meaning of these provisions is crystal clear. Respondents guaranteed that Petitioners' "right to arbitrate . . . in accordance with the [2022 Agreement]" would survive any amendment to the 2022 Agreement regardless of date and also guaranteed Petitioners the right "to opt out of any amended terms." Petition Ex. 6,

---

[3] *See* Petition, Ex. 6 ("This Tolling Agreement . . . is made by and between each of the 10,173 individuals identified on Exhibit A to Jonathan Gardner's correspondence to Hulu, LLC dated November 18, 2022 . . . the 10,820 individuals identified on Exhibit A to Jonathan Waisnor's correspondence to Hulu, LLC dated January 18, 2023 . . . and the 4,503 individuals identified on Exhibit A to Jonathan Gardner's correspondence to Disney Platform Distribution, Inc. and BAMTech, LLC ... (collectively . . . the "Tolling Claimants")"

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

6

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

1   ¶10.  In other words, in return for Petitioners not immediately filing arbitration in

2   March 2023, Respondents agreed not to enforce any amended terms *or, in the*

3   *alternative,* to permit Petitioners to opt out of any amended terms to proceed directly

4   to Court if they wished.  Respondents' argument regarding the 2024 Agreement

5   requires the Court to ignore these straightforward provisions.

6        Justice Gorsuch's concurrence in the Supreme Court's recent decision in *Suski*

7   *v. Coinbase*, *Inc.,* 602 U.S. 143 (2024), is in instructive:

8        What happens when (as in this case) the parties have two contracts, one
     with a delegation clause, a second without, and a dispute later arises?
9        Like everything else in this area, it depends on what the parties have
     agreed . . . .  Just imagine a master contract providing that "all disputes
10       arising out of or related to this or future agreements between the parties,
     including questions concerning whether a dispute should be routed to
11       arbitration, shall be decided by an arbitrator."  Absent some later
     amendment, a provision like that would seem to require a court to step
12       aside.

13  *Id.* at 152-53 (Gorsuch, J., concurring).  Although the dispute in *Coinbase* involved

14  delegation and arbitrability, the broader point stands: because arbitration is a matter

15  of contract, parties are free to specify overarching rules for dispute resolution in a

16  superseding master agreement, like the Tolling and Bellwether Agreements here.

17       Further, following the expiration of the tolling period, each Petitioner served

18  written notice through counsel rejecting Respondents' modifications to the

19  arbitration procedures.[4]  Petition ¶49, Ex. 16.  Petitioners' opt out letter explicitly

20  followed the procedures outlined in the parties' Tolling Agreement and Bellwether

21  Agreement, preserving their right to arbitrate under the 2022 Agreement, consistent

22  with the language of the Bellwether and Tolling Agreements and the expression of

23  that intent in the opt out letter itself.  Petition ¶49, Ex. 16.

24       Next, Respondents claim that Petitioners have somehow waived the

25  opportunity to contest the application of the 2024 Agreement because it was not

26

27  _____
     [4] There is nothing inconsistent between the Tolling Agreement's preservation of the
     2022 Agreement's arbitration clause and the opt-out provisions.

28

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

discussed in the Petition or Petitioners' Motion. Cross-petition 25. Petitioners are not required to anticipate arguments Respondents' will make in a Cross-Petition that was not yet filed. The scheduling order in this matter contemplated Petitioners responding to the cross-motion along with filing a reply in support of their Petition. ECF 26 at 2. Any suggestion of waiver is absurd.

Regardless, as set forth above, the 2024 Agreement **does not apply to Petitioners**, because the parties to the Tolling and Bellwether Agreements **expressly agreed that it would not**. Petition Ex. 6, Ex. 10. Respondents' position, that the Tolling Agreement contains no bar on their right to impose an amended arbitration clause on Petitioners, would impermissibly read Petitioners' rights to invoke the 2022 Agreement out of the Tolling Agreement. Yet, the Ninth Circuit has held: "We will not interpret a contract so as to render one of its provisions meaningless." *Turlock Irrigation Dist. v. FERC*, 903 F.3d 862, 872 (9th Cir. 2018).

## II. UNDER RESPONDENTS' CITED DELEGATION PRINCIPLES, THE APPROPRIATE FORUM TO DETERMINE ALL OTHER ISSUES, INCLUDING THRESHOLD ARBITRABILITY ISSUES, IS JAMS

Respondents are correct that "The Supreme Court has made 'abundantly clear' that where, as here, 'an arbitration agreement clearly delegates the question of arbitrability to the arbitrator[,] there is no exception that allows the Court to address questions of arbitrability.'" Cross-Petition 26 (quoting *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1003 (C.D. Cal. 2022)). Accordingly, several points raised in Respondents' brief are, by Respondents' own admission, not properly before this Court. Because the delegation language in both agreements is equally broad and each delegates disputes over interpretation, applicability, and enforcement of the agreement as well as arbitrability of any dispute (*see* Petition Ex. 2, at 16; Ex. 3, at 7-8), the only question is which arbitral provider—JAMS or ADR Services/NAM— has jurisdiction over questions of arbitrability. The answer, unequivocally, is JAMS.

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

As explained in more detail above, the parties' Tolling Agreement expressly reserves "the Tolling Claimants' right to arbitrate . . . in accordance with [the 2022 Agreement]." Petition Ex. 6, ¶10. Respondents erroneously point to JAMS's initial refusal to commence arbitration as proof that disputes belong with ADR Services/NAM (*see* Cross-Petition 10, 18, 22).  However, JAMS's decision was not a finding that arbitrability questions rested with ADR Services/NAM, but was instead a finding that JAMS could not "commence arbitration consistent with JAMS Rule 5" because the applicable filing fees had not been paid[5] (and thus the demands "still have not been submitted" such that arbitration could be commenced), and because Respondents objected to JAMS on the basis of its updated Terms. Petition, Ex. 19, at 2.  Crucially, both of JAMS's reasons for initially refusing to commence arbitration were contemplated by the Tolling Agreement, which in addition to providing that Respondents would not materially alter the 2022 Agreement, provided that "failure to pursue a Tolled Claim during the pendency of this Agreement does not constitute an agreement as to the applicable version of the Disney/BAMTech Subscriber Agreement that might apply to the Tolled Claims." Petition Ex. 6, at ¶10.

In other words, JAMS did not refuse to commence arbitration because it agreed that the 2024 Agreement applies or that ADR Services/NAM is the proper forum for this dispute.  Instead, JAMS did not commence arbitration because of the technical requirements of JAMS Rule 5, which would be met had Respondents not violated the Tolling Agreement and objected to JAMS's jurisdiction in attempt to retroactively

---

[5] Respondents should not be allowed to "blanch[ ] at the cost of the filing fees [they] agreed to pay in the arbitration clause." *Abernathy v. Doordash, Inc.,* 438 F.Supp. 3d 1062, 1068 (N.D. Cal. 2020) (describing the company's refusal to pay fees associated with its own-drafted arbitration clause as "hypocrisy" and "irony upon irony").  As Courts have noted, a company may be "hoist[ed] by its own contractual petard" in this situation but is not permitted to avoid responsibility for fulfilling its contractual promises. *Valve Corp. v. Bucher L. PLLC,* 571 P.3d 312, 321 (Wash. Ct. App. 2025). Indeed, Respondents made "the business decision to preclude class, collective, or representative claims in its arbitration agreement with its consumers, and [arbitration forum] fees are directly attributable to that decision." *Uber Tech., Inc. v. Am. Arbitration Assn., Inc.,* 204 A.D.3d 506, 510 (N.Y. App. Div. 2022).

LABATON KELLER SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

apply the 2024 agreement.  As JAMS itself explained: "[i]f the parties agree to JAMS or a court orders the parties to proceed here, JAMS will resume administration." Petition Ex. 19, at 2.  The Court should order Respondents' to proceed in JAMS.

JAMS thus has the authority to decide the issues raised in Respondents' brief. The 2022 Agreement states that the parties "agree to arbitrate . . . all disputes … that are not resolved informally[.]" Petition Ex. 2, at 16.  "Disputes" is defined to include "any dispute, action, or other controversy, whether based on past, present or future events, … concerning … this Agreement[.]"  *Id.*  The 2022 Agreement further provides that the parties "empower [JAMS] with the exclusive authority to resolve any dispute related to the interpretation, applicability or enforceability of these terms . . . including, without limitation the arbitrability of any dispute, and any claim that all or any part of this Agreement are void or voidable."  *Id.*

Respondents' remaining issues thus fall squarely within this clear delegation provision. For instance, the notion that the 2024 Agreement supersedes the 2022 Agreement is based on a "future event[]  . . . concerning" the 2022 Agreement and asserts that the 2022 Agreement is void. *See* Cross-Petition 24-25 (arguing "the 2022 Agreement [is] no longer in effect").  Respondents acknowledge that "the opt-out issue" "and any other arbitrability, applicability, or enforceability issues … [have] been delegated," though they are wrong about to whom the issues are delegated. *Id.* at 25, 26. Still, Respondents improperly raise various enforceability issues for this Court, including whether the 112 Petitioners who they claim did not agree to the 2022 Agreement have an enforceable arbitration agreement (Cross-Petition 29-30), and whether the arbitration agreement is applicable to and enforceable against ESPN Inc. and the Walt Disney Corporation (Cross-Petition 30-31).  Indeed, both ESPN Inc. and the Walt Disney Co.—who now seek to challenge the agreement's applicability to them in Court—have previously acknowledged that these issues are squarely for the arbitrator. *See* Brief in Support of ESPN Inc.'s Mot. to Compel Arbitration &

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

10

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

Stay this Action, at 25, *Swartz v. ESPN, Inc.*, No 1:22-cv-01523-KM, ECF No. 13 ("the arbitrator is the responsible party for assessing any challenges to the enforceability or scope of the arbitration agreement."); Defendant's Mot. to Compel Arbitration & Stay Action, at 29, *Sadlock v. The Walt Disney Co.*, No. 3:22-cv-09155-EMC, ECF No. 18 (N.D. Cal. July 31, 2023) ("Plaintiff agreed to delegate all questions of applicability, enforceability, and scope to the arbitrator, not the Court.").[6]  The Court should find the same here.

## III. EVEN IN THE ABSENCE OF THE TOLLING AND BELLWETHER AGREEMENTS, RESPONDENTS WOULD BE PROHIBITED FROM UNILATERALLY AMENDING THE ARBITRATION CLAUSE AS TO PETITIONERS

Independently, and even if there were no preservation and opt-out provisions for Petitioners to enforce, California's implied covenant of good faith and fair dealing bars the changes Respondents seek to enforce here.  A party that reserves the right to unilaterally amend an agreement is bound to use that right in a manner consistent with the implied covenant of good faith and fair dealing, and an amendment to an arbitration clause without a savings provision exempting claims previously noticed is unenforceable. *See, e.g., Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1433 (Cal. Ct. App. 2012) (under both the FAA and state law, an "arbitration agreement is unenforceable if a party could "amend the contract in anticipation of a specific claim, altering the arbitration process to [the other party's detriment"); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 963 (Cal. Ct. App. 2015) ("When one party to a contract retains the unilateral right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of

---

[6] *See also Antoine v. ESPN Enters., Inc.*, No. 2:23-cv-00887-JLB-NPM, Mot. to Compel Arbitration and Stay the Case Pending the Resolution of this Motion (M.D. Fla. Dec. 7, 2023), ECF No. 19, at 17 ("the issue of the Arbitration Agreement's scope and enforceability is delegated to the arbitrator based on the terms of the Arbitration Agreement.").

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights.").

Respondents' attempted contract modification, seeking to change the rules of the game mid-play, is an unenforceable misuse of the unilateral amendment power. They do not dispute that all Petitioners provided notice and were parties to the Tolling Agreement. They also cannot dispute that 2,913 Claimants filed in JAMS on June 22, 2023. Waisnor Opposition Decl. Exs. E, F. Respondents attempted to amend the 2022 Agreement on January 25, 2024, long after receiving notice of Petitioners' claims. The amendment was done while actively litigating bellwether arbitrations stemming from the same dispute, after agreeing that any such changes would not apply to Petitioners, and at the same time they were compelling similar claims to arbitration under the 2022 Agreement in federal court. Petition ¶46.

What is more, Respondents' changes are impermissibly self-serving, as demonstrated by Respondents' selection of ADR Services. This forum would more than double the cost for each Petitioner to bring a claim, and does not contain the same procedural protections for consumers, or appear to conduct arbitration at all outside of California. *See infra*, §IV.B. Tellingly, none of the cases Defendants cite compelling arbitration before ADR Services involve consumers. *See Kohn Law Grp., Inc. v. Jacobs*, 2018 WL 6118550, at *1 (C.D. Cal. Aug. 7, 2018) (fee dispute arising from co-counsel contingency agreement); *Espinoza v. C&L Refrigeration Corp.,* 2014 WL 12597140, at *7 (C.D. Cal. Dec. 10, 2014) (employment law claim); *Vogel v. Vogel*, 2014 WL 12575815, at *3 (C.D. Cal. June 23, 2014) (business consultancy dispute).

There is no doubt that such conduct violates the implied covenant in the context of a consumer contract of adhesion. *See, e.g., Kim v. Allison*, 87 F.4th 994, 998, 1001 n.7 (9th Cir. 2023) (refusing to enforce class action waiver unilaterally inserted into agreement after putative class action was filed). In *Kim*, the Ninth

Circuit observed that such a "retroactive waiver of rights" in a consumer contract was "invalid under California law." *Id*. at 1001, 1001 n.7; *see also Heckman v. Live Nation Entm't, Inc.*, 120 F.4th 670 (9th Cir. 2024); *Bates v. Sephora USA, Inc*., No. CPF-24-518617 (Cal. Super. Ct. S.F. Cnty. Oct. 3, 2024). Likewise here, the implied covenant of good faith and fair dealing precluded Respondent from making any material changes to its arbitration clause that retroactively apply to known, accrued claims. Thus, Respondents attempt to enforce the 2024 Agreement must be rejected.

## IV. RESPONDENTS' CROSS-PETITION WOULD HAVE TO BE DENIED EVEN IN THE ABSENCE OF THE 2022 AGREEMENT, BECAUSE RESPONDENTS' 2024 AGREEMENT, AND THE METHOD OF ITS IMPOSITION UPON PETITIONERS, IS UNCONSCIONABLE

Even if all the above was not true – if Respondents had not agreed to keep the 2022 Agreement in place for Petitioners, Petitioners had not timely opted out of the 2024 Agreement, and if Respondents were not prohibited by the implied covenant from applying the 2024 Agreement, Respondents' cross-petition would have to be denied.  "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 447 P.3d 680, 689 (Cal. 2019).  Unconscionability has procedural and substantive components: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc*., 6 P.3d 669, 690 (Cal. 2000).

### A.    The 2024 Agreement Is Procedurally Unconscionable.

In deciding procedural unconscionability, California courts "focus[] on the factors of oppression and surprise." *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (Cal. Ct. App. 1993). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

13

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

choice." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (Cal. Ct. App. 2001).  Surprise is a "function of the disappointed reasonable expectations of the weaker party," *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (Cal. Ct. App. 2003), and can arise when "the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms," *Patterson*, 14 Cal. App. 4th at 1665. As such, any contract of adhesion is at least somewhat procedurally unconscionable. *See, e.g. Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (en banc).

In addition to being a contract of adhesion, the 2024 Agreement is oppressive because of how Respondents amended and modified it. Respondents were on notice of Petitioners; claims since 2023, entered into the Tolling Agreement and Bellwether Agreement while the Operative SA was in effect, and agreed to stay the JAMS Petitioners' claims filed with JAMS. Petition ¶¶31-32, 37-38. The circumstances match those in *Heckman v. Live Nation Entertainment, Inc.,* No. 22-CV-00047 (C.D. Cal. Aug, 10, 2023). In *Heckman*, Ticketmaster made similar attempts to change its arbitration provision after being on notice of numerous claims to adopt novel mass arbitration procedures. *See* Court's Final Ruling on Defs.' Mot. to Compel Arbitration, No. 22-CV-00047, ECF No. 202 (C.D. Cal. Aug, 10, 2023). In *Heckman*, as here, the amendments applied "irrespective of when [the] dispute ... arose," each consumer "agree[d]" merely "[b]y continuing to use this Site after that date." *Id.* at 10-11. The *Heckman* court found that this misuse of the unilateral amendment power "evinces an extreme amount of procedural unconscionability" and rejected the amendments. *Id.* at 9. The holding in *Heckman* unambiguously applies here.

Nor is the change of arbitral provider from JAMS to ADR Services or NAM a simple swap from one equivalent entity to another. NAM, unlike JAMS, utilizes an alternative mass arbitration process with complex, procedural rules if more than 25 consumers file similar claims with the same or coordinated counsel, including

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

14

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

consolidation of separate arbitrations and appointment of a "Procedural Arbitrator" to resolve issues which NAM, in its sole discretion, determines are similar among otherwise separate demands.   Waisnor Opposition Decl. ¶9, Ex. C.  Another Court in this District – affirmed by the Ninth Circuit – has confirmed that such "a significant change . . . from individual, bilateral arbitration to mass arbitration, unilaterally, in the midst of ongoing litigation, to be applied retroactively," evinces an "extreme amount of procedural unconscionability." *Heckman v. Live Nation Entm't, Inc.*, 686 F. Supp. 3d 939, 953 (C.D. Cal. 2023), *aff'd* 120 F.4th 670 (9th Cir. 2024). Overall, Respondents' attempt to enforce the 2024 Agreement "unequivocally represent[s] a systematic effort to impose arbitration as an inferior forum designed to work to [their] advantage." *Heckman v. Live Nation Entm't, Inc.*, 120 F.4th at 688 (cleaned up).  It's hard to think of a case where Respondents' intention is more obvious.

## B.    The 2024 Agreement is Substantively Unconscionable

The 2024 Agreement is substantively unconscionable because it is "overly harsh" and "one-sided." *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1034 (N.D. Cal. 2022). "Substantive unconscionability examines the fairness of a contract's terms." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021). "[T]he standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain—must be as rigorous and demanding for arbitration clauses as for any contract clause." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (Cal. 2015). To be enforceable, the aspects of an arbitration agreement must have a "modicum of bilaterality." *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1281 (Cal. Ct. App. 2004). "Unfairly one-sided" terms in an arbitration agreement create substantive unconscionability. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (Cal. 2003).

The 2024 Agreement is riddled with unfair, one-sided terms that protect Respondents at the expense of their customers. Among other things, the 2024

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

15

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

Agreement imposes a substantively unconscionable Formal Complaint Process requiring individuals seeking arbitration to provide a notice including "detailed factual information sufficient to evaluate the merits of the claiming party's individualized claim, and the specific relief sought, including whatever amount of money is demanded and the means by which the demanding party calculated the claimed damages." 2024 Agreement, ¶7(b). These requirements – *in an informal, pre-arbitration notice provision* – mandate that claimants provide ESPN+ with more information than necessary to bring an action in court, much less satisfy JAMS's informal notice standards, before a claimant even has the right to initiate arbitration and even if the parties have already mediated the dispute (as here). *Id*.

Such one-sided duties to exhaust pre-arbitration remedies would give Respondents a "free peek" at claims, which is "an advantage if and when [a customer] were to later demand arbitration." *Nyulassy*, 120 Cal. App. 4th at 1282-83. They "add[] to the contract's substantive unconscionability," because they permit Respondents "to preview" its customers' claims and develop strategy in advance. *Dunham v. Env't Chem. Corp.*, No. 06-3389, 2006 WL 2374703, at *8 (N.D. Cal. Aug. 16, 2006). The Formal Complaint Process is an unconscionable provision.

Nor do the issues stop there. While Petitioners must personally participate in this conference, whether or not they are represented by counsel, it does not require an officer or employee from the Respondents to participate in any such conferences, and expressly provides that ESPN+ may appear at such conferences through counsel with no representative required.  2024 Agreement, ¶7(b). Accordingly, "[t]he provision...lacks mutuality, which is a 'paramount' consideration in assessing substantive unconscionability." *MacClelland*, 609 F. Supp. 3d at 1042. This provision is also obviously designed to ensure a "free peek" into a consumer's claims without the opportunity for the consumer to learn anything about ESPN+'s claims. Further, conducting thousands of such conferences would incur massive delay for

Labaton Keller
Sucharow LLP
Attorneys at Law
New York

little or no benefit.  Such provisions, which can put valid claims on hold for years or decades simply because a defendant has allegedly harmed many people at the same time "operate to effectively thwart arbitration and vindication of rights altogether." *MacClelland*, 609 F. Supp. 3d at 1046. Finally, this entire informal resolution process allows Respondents to interfere with their customers' representation of counsel and ability to commence arbitration.  Indeed, the intent behind Respondents' informal pre-arbitration provision is not a swift resolution of claims, but an attempt to dissuade customers from bringing claims at all.

Finally, the 2024 Agreement prohibits the award of public injunctive relief, and is therefore, void under California law. 2024 Agreement, ¶7. An "arbitration provision is invalid and unenforceable [if] it waives [a] right to seek public injunctive relief in any forum." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 954 (2017); *see also Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 828 (9th Cir. 2019). By contrast, "[c]ontracts permitting public injunctive relief in some fora but not others do not violate *McGill*." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 478 (9th Cir. 2024). Here, the 2024 Agreement requires consumers to resolve their disputes in arbitration rather than in court, and Section 7(c) stipulates that "[t]he arbitrator may award damages to either party individually as a court could, including declaratory or injunctive relief, but only to the extent required to satisfy such party's individual claim." Petition Ex. 3, at 8. Because the 2024 Agreement prohibits ESPN+ subscribers from seeking public injunctive relief, it runs afoul of *McGill* and is unenforceable. *See* 2 Cal. 5th at 954; *see also Keebaugh v. Warner Bros. Entm't, Inc.*, 100 F.4th 1005, 1022 (9th Cir. 2024) (finding terms of service requiring arbitration of all claims and limiting arbitrator's ability to award relief "only in favor of the individual party seeking relief" as violating *McGill* and unenforceable in California).

To be clear, several of these issues plague the 2022 Agreement, but Petitioners consented to have those issues adjudicated by JAMS under the 2022 Agreement's

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

17

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

delegation clause. However, because Petitioners never agreed to adjudicate issues of arbitrability before NAM (under a drastically different mass arbitration framework) or ADR Services (an inadequate forum with an unconscionable fee structure), and because the above issues impair the 2024 Agreement's own delegation clause, sending arbitrability issues to either of those fora is impermissible.

ADR Services' fee structure, which imposes nearly $600 in nonrefundable initiation fees on consumers – approximately twice the cost of initiating a litigation in state or Federal court or a JAMS arbitration – is a substantively unconscionable forum for this reason alone. Waisnor Opposition Decl. ¶ 8. An arbitration clause that "impose[s] significant costs on" a consumer "up front, regardless of the merits of the . . . claims," goes "beyond the line required to render an agreement invalid." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 926 (9th Cir. 2013); *see also Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum," rendering it unenforceable). It is for this very reason that more established providers such as JAMS and AAA expressly limit their initiation fees for consumers and employees to an amount "approximately equivalent to current court filing fees." *JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness*, at 7, JAMS, May 1, 2024, *available at* https://www.jamsadr.com/consumer-minimum-standards/.

Respondents are clearly unhappy with the results of the JAMS arbitrations, which resulted in an average award of around $7,500, and are now trying to strip substantive and procedural rights to a fair forum from the remaining customers simply due to their choice of counsel. Waisnor Opposition Decl. ¶ 2. ADR Services appears to lack any equivalent "consumer minimum standards" similar to those present in JAMS (or AAA's equivalent Consumer Due Process Protocol, or even

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

NAM's reduced initiation fees for consumer claimants). *Id.* at ¶ 6. This departure from both Supreme Court guidance and standard practice at other ADR providers serves no purpose other than to unfairly increase the burden on Claimants who seek to bring meritorious claims. *MacClelland*, 609 F. Supp. 3d at 1046. Moreover, ADR Services appears to have no office locations where arbitrations could be conducted outside of California (*see* Our Locations, ADR Services, Inc., https://www.adrservices.com/our-locations/) and appears not to employ any arbitrators located outside of California (*see* Neutrals, ADR Services, Inc., https://www.adrservices.com/neutrals/). As such, it is not adequate to handle the claims of Petitioners who reside in other states. None of Respondents' cases compelling arbitration before ADR Services finds otherwise because none of those cases addressed the issue of ADR Services' ability to provide services outside of California. *See Kohn Law Grp.*, 2018 WL 6118550, at *3 (addressing arbitration agreed to be held in Los Angeles); *Espinoza*, 2014 WL 12597140, at *1 (addressing arbitration agreed to be held in Orange County); *Vogel*, 2014 WL 12575815, at *1 (addressing arbitration agreed to be held in Los Angeles).

## V.  RESPONDENTS' ARGUMENT THAT THEIR AFFILIATED ENTITIES NOT SPECIFICALLY NAMED IN THE 2022 AGREEMENT ARE NOT BOUND THEREBY IS CONTRARY TO LAW AND ITS OWN POSITION IN PRIOR LITIGATION

Respondents claim that ESPN Inc. and The Walt Disney Company, undeniably corporate affiliates of BAMTech, LLC and Disney Platform Distribution, Inc., are not bound to arbitrate with Petitioners under any version of the relevant arbitration agreement. Cross Petition at 30-31. This issue too is delegated to arbitrators to decide. Indeed, Respondent ESPN Inc is currently advancing this exact interpretation in litigation. *See, e.g., Swartz v. ESPN Inc.*, Brief in Support of ESPN Inc.'s Renewed Motion to Compel Arbitration and Stay This Action, ECF No. 44 at 23, Case No. 22-cv-01523-KM (M.D. Pa Feb. 9, 2024) ("Here, the plain language of the Subscriber

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

19

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

1    Agreement's Arbitration Provision imbues the arbitrator with the exclusive authority

2    to resolve any dispute relating to the interpretation, applicability or enforceability of

3    these terms or the formation of this contract, including the arbitrability of any

4    dispute[.]").[7]

5        The 2022 Agreement, like the 2024 Agreement, broadly provides for

6    arbitration of any "related disputes involving The Walt Disney Company or its

7    affiliates" and "any dispute, action, or other controversy . . . concerning" "the ESPN+

8    website, application, video player, and related software, associated content, and other

9    services." 2022 Agreement, ¶7; 2024 Agreement, ¶7. Petitioners' allege violations of

10   the VPPA by both BAMTech and other Disney affiliate entities. *See* Petition ¶1,10-

11   13. Further, disputes with the "affiliates" are clearly "related" to the underlying

12   VPPA dispute with BAMTech. The most reasonable reading of this straightforward

13   language is that BAMTech and its affiliates sought to define *all* disputes between

14   these closely related entities and their customers as subject to arbitration, rather than

15   having these claims adjudicated simultaneously in multiple fora. 2022 Agreement,

16   ¶7. Indeed, Respondents have taken the position that the ESPN+ Agreement compels

17   arbitration of wrongful death claims brought by survivors of visitors to Disney

18   restaurants. *See* Anna Betts, *Disney Defends Use of Streaming Terms to Block*

19   *Restaurant Allergy Death Lawsuit*, The Guardian (Aug. 15, 2024), *available at*

20   https://www.theguardian.com/film/article/2024/aug/15/disney-wrongful-death-

21   lawsuit-dismissal.[8]

22

23   [7] *See also Swartz v. ESPN Inc.*, Brief in Support of ESPN Inc.'s Renewed Motion to
     Compel Arbitration and Stay This Action, ECF No. 44 at 23, Case No. 22-cv-01523-
24   KM (M.D. Pa Feb. 9, 2024) ("The parties also agreed to delegate arbitrability to the
     arbitrator by explicitly incorporating the JAMS Rules into the Subscriber Agreement.
     *See* SUMF ¶ 21. The JAMS Rules provide that any "[j]urisdictional and arbitrability
25   disputes . . . shall be submitted to and ruled on by the Arbitrator." JAMS Streamlined
     Arbitration    Rules    &    Procedures,    Rule    8(b),    available    at
26   https://www.jamsadr.com/rules-streamlinedarbitration (last visited Feb. 9, 2024).").
     [8] Respondents eventually withdrew their motion to compel arbitration in that action
27   after the attempt resulted in widespread public backlash. Rachel Treisman, *Disney*
     *Backtracks On Request To Toss Wrongful Death Suit Over Disney+ Agreement*,

28

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

20

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

Federal law is consistent with this reasonable reading. "A non-signatory may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract." *Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.,* 325 F.3d 54, 62 n.2 (1st Cir. 2003). Arbitration against such non-signatories is properly compelled under principles of equitable estoppel where "the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement," or "because of the close relationship between the entities involved." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009) (cleaned up). *See also, e.g., Ragone v. Atlantic Video*, 595 F.3d 115, 126-27 (2d Cir. 2010) (compelling arbitration of claims against ESPN despite no direct contract between ESPN and plaintiff because the claims "rely on the concerted actions of both defendants and are therefore substantially interdependent"); *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 280 (2d Cir. 2003) (arbitration clause applied to additional non-signatory, related subsidiary).

ESPN Inc. and its affiliates have "knowingly exploit[ed]" the arbitration clause in the 2022 Agreement, as shown by Respondents' counsel's statements in an unrelated litigation. *Swartz v. ESPN, Inc.*, No. 1:22-cv-01523-KM (M.D. Pa.), was a putative class action brought against ESPN, Inc. as the owner of ESPN.com and the ESPN+ paid streaming service for violating the VPPA and the Pennsylvania Wiretap Act. In response to the complaint in *Swartz*, ESPN Inc. moved to compel arbitration of the plaintiff's claims against it before JAMS, citing the same 2022 Agreement it claims it is not bound by in support of its motion.

Specifically, ESPN Inc. unequivocally argued that the agreement "includes a binding arbitration and class action waiver provision that covers 'all disputes' between the subscriber and Disney+, ESPN+, **and The Walt Disney Company and**

---

NPR (Aug. 20, 2024), *available at* https://www.npr.org/2024/08/14/nx-s1-5074830/disney-wrongful-death-lawsuit-disney.

21

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

**its affiliates**." *See* Waisnor Opposition Decl. ¶10, Ex. D ¶¶17-18. That motion remains *sub judice,* with the action stayed pending decision by the Pennsylvania Supreme Court on an issue not relevant to the current action, and ESPN Inc. has made no effort to withdraw its motion or revise its argument despite taking a completely contrary stance in this action. *Swartz v. ESPN, Inc.*, No. 1:22-cv-01523-KM, ECF No. 54. ESPN Inc. should not be allowed the hypocrisy of arguing that it is permitted to compel arbitration of claims against it before JAMS based on the same contract at issue here, but that this contract does not confer JAMS jurisdiction over Claimant's substantially similar claims. Indeed, when ESPN Inc. made a substantially similar argument during the bellwether arbitrations, multiple merits arbitrators rejected it. This court should do the same.[9]

Finally, the bellwether proceedings also support this reading. Disney argued that the Claimants could not recover on the merits of their dispute because certain Pixel technologies embedded into ESPN+, the website owned by BAMTech LLC, were operated not by BAMTech LLC, but by other Disney affiliated entities. Waisnor Opposition Decl. ¶ 2. The JAMS arbitrators who awarded bellwether claimants damages against Respondents rejected Respondents' argument. *Id*. The Court should not let Respondents set that trap here.

## VI. RESPONDENTS' PREEMPTIVE REPUDIATION OF ANY OBLIGATION TO ARBITRATE BEFORE JAMS UNDOUBTEDLY CONSTITUTES A "REFUS[AL] TO ARBITRATE UNDER A WRITTEN AGREEMENT FOR ARBITRATION"

Respondents argue that Petitioners have not met their burden to show that they refused to arbitrate. *See* Cross-Petition 21-22. Respondents do not dispute that the parties' Tolling and Bellwether Agreements memorialized that the 2022 Arbitration

---

[9] Claimants note that courts do impose sanctions where litigants' conduct taking "inconsistent positions . . . wastes time and draws attention away from deserving litigants." *See, e.g., In re Tower Park Props., LLC*, 2013 WL 12148276, at *3 (C.D. Cal. Nov. 21, 2013).

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

1    Agreement are the operative terms that govern Petitioners' claims.  *Id.* at 15-16.

2    Nevertheless, Respondents continue to object to arbitrating before JAMS, as

3    expressly required under the 2022 Agreement.  *Id.* at 23.  To avoid their clear

4    obligations, Respondents claim that they are willing to arbitrate – just under the 2024

5    Agreement, which the parties have expressly agreed would not apply to Petitioners.

6    Cross-Petition 23-25.  The FAA does not permit such gamesmanship.

7        Petitioners are "aggrieved by the alleged failure, neglect, or refusal of [Disney]

8    to arbitrate under a ***written agreement*** for arbitration."  9 U.S.C. § 4.  The critical

9    question, therefore, is not whether Respondents have refused to arbitrate *somewhere*,

10   but whether they have refused to arbitrate according to the specific terms of the 2022

11   Agreement.  *See Codding v. Pearson Educ., Inc.*, 842 F. App'x 70, 71 (9th Cir. 2021)

12   ("An anticipatory breach of contract occurs on the part of one of the parties to the

13   [contract] when [it] positively repudiates the contract by acts or statements indicating

14   that [it] will not or cannot substantially perform essential terms [of the contract].")

15       On this record, a refusal to arbitrate is clear.  Respondents unequivocally

16   expressed they would not arbitrate before JAMS as required by the 2022 Arbitration

17   Agreement.  Respondents notified JAMS on October 21, 2024 that they "will not

18   participate in *any* further proceedings before JAMS of these purported claimants."

19   (Petition, Ex. 18, at 1 (emphasis in original)).  Even for Petitioners who did not file

20   in JAMS, on September 13, 2024, Respondents informed counsel that "our clients

21   will not engage in the arbitration process with any of your clients before JAMS."

22   Petition, Ex. 13.  Such preemptive refusal to arbitrate under "a written agreement for

23   arbitration" (the 2022 Agreement) is more than sufficient under 9 U.S.C. § 4.

24       *In re Cintas Corp. Overtime Pay Arbitration Litigation*, 2007 WL 137149

25   (N.D. Cal. Jan. 12, 2007) is instructive.  There, a party similarly argued that so long

26   as a party is willing to arbitrate in some other forum it has not refused to arbitrate.

27   *Id.*  The Court rejected the argument, holding that, "[i]f the written agreement

28

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

23

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

contains [a forum] clause, then logically, a party's attempt to arbitrate elsewhere is a refusal to arbitrate under the agreement. This interpretation is also more consistent with the Supreme Court's admonition that private agreements to arbitrate should be enforced according to their terms." *Id.*; *see also Beauperthuy v. 24 Hour Fitness USA, Inc.,* 2011 WL 6014438 (N.D. Cal. Dec. 2, 2011) ("[i]f a party were deemed not to have "refused" arbitration so long as it expressed a willingness to arbitrate in some venue somewhere, then a valid arbitration agreement could be rendered meaningless."). Respondents freely admit that they objected to proceeding before JAMS. *See* Cross-Petition 22. That objection alone is sufficient to establish a refusal under the 2022 Agreement. *See Wilson v. Cracker Barrel Old Country Store, Inc.,* 2023 WL 10476032, at *6 (N.D. Ga. Jan. 30, 2023) (holding that communicated intention not to arbitrate enough to establish refusal to arbitrate). Indeed, under Respondents' reading of the FAA, should the Court find that the 2024 Agreement applies, Petitioners could simply avoid arbitrating before ADR Services or NAM by simply offering to arbitrate before JAMS or AAA, and this Court would be powerless to enforce the 2024 Agreement. To state that proposition is to refute it.

Respondents' cited cases in support of this position are inapposite. In *Jacobs v. USA Track & Field*, a petitioner filed a motion to compel arbitration under the commercial rules of the AAA, while respondent contended that the AAA's supplementary rules applied. *See* 374 F.3d 85, 87 (2d Cir. 2004). There was no dispute in *Jacobs* regarding the appropriate agreement or dispute as to an alternative forum. *Id.* at 89. In *Kim v. Colorall Technologies, Inc.*, the defendant similarly did not refuse to proceed with the designated forum in the arbitration clause. *See* 2000 WL 1262667 (N.D. Cal. Aug. 18, 2000) (addressing specific American Arbitration Association venue to hold arbitration). In *Jolly v. Intuit Inc.*, the court found no refusal because there was no absolute agreement to arbitrate; rather, the agreement in question also permitted claims to proceed in state court. *See* 485 F. Supp. 3d 1191,

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

24

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS

1206 (N.D. Cal. 2020). Not one of Respondents' cited cases involved a party refusing to arbitrate according to the operative arbitration agreement.

Accordingly, Respondents' refusal to proceed under the 2022 Agreement, which designates JAMS as the arbitration forum, satisfies the refusal element of a motion to compel arbitration under § 4 of the FAA.

## VII.   RESPONDENTS' REMAINING ARGUMENTS ABOUT THE TIMING AND NATURE OF PETITIONERS' USE OF THEIR PLATFORMS ARE MERITS ISSUES DELEGATED TO THE ARBITRATOR

Respondents spend a great many words sorting Petitioners into distinct buckets of users based on the timing of their use of Respondents' services. *See generally,* Cross-Petition 11, 18-19. These distinctions are not relevant because each Petitioner was a Tolling Claimant under the Tolling Agreement and the Bellwether Agreement. No Claimant is bound by the 2024 Agreement. Tellingly, Respondents do not claim that *any* of the Petitioners were never their customers, did not receive notice of the 2022 Agreement, [10] are not parties to the Tolling Agreement or Bellwether Agreement, or do not have an agreement to arbitrate with them. In fact, Respondents make the same Cross-Petition against all Petitioners. Even if they had, "a party cannot avoid compelled arbitration by generally denying . . . facts." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Petition and Motion, Petitioners respectfully request that the Court grant their Petition and Motion in their entirety and deny Respondents' Cross-Petition in its entirety.

---

[10] Respondents imply that these Petitioners signed up for ESPN+ before the 2022 Agreement was introduced. Respondents cannot argue that the general process of updating their website with the 2024 Agreement and giving notice of the change would have been sufficient to bind all Petitioners to the 2024 Agreement, but deny that the same process would bind them to the 2022 Agreement in place when they gave notice.

LABATON KELLER SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

DATED: September 19, 2025

**LABATON KELLER SUCHAROW LLP**

*/s/ Jonathan Waisnor*

Jonathan Waisnor (Bar No. 345801)
James Fee (admitted pro hac vice)
Alexander F. Schlow (admitted pro hac vice)
Stephen Kenny (admitted pro hac vice)
140 Broadway
New York, New York
10005 Tel.: (212) 907-0700
Fax: (212) 907-7039
jwaisnor@labaton.com
jfee@labaton.com
aschlow@labaton.com
skenny@labaton.com

*Counsel for Petitioners*

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2      The undersigned, counsel of record for Petitioners, certifies that this brief does

3   not exceed 25 pages in length in compliance with the page limit in Section 6(c) of

4   the Court's Civil Standing Order.

5   DATED: September 19, 2025

6                                    */s/ Jonathan Waisnor*

7                                    Jonathan Waisnor (Bar No. 345801)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LABATON KELLER
SUCHAROW LLP
ATTORNEYS AT LAW
NEW YORK

27

PETITIONERS' REPLY IN SUPPORT OF THE AMENDED PETITION
AND OPPOSITION TO THE CROSS-PETITION
2:25-cv-03861-MWC-KS