JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
STEPHANIE G. HERRERA (State Bar No. 313887)
Stephanie.Herrera@mto.com
V. GRACE DAVIS (State Bar No. 336732)
Grace.DavisFisher@mto.com
CONNOR HOGE (State Bar No. 349884)
Connor.Hoge@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000

*Attorneys for Respondents/Cross-Petitioners*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

MATT ALLEN AND 3,552 OTHER INDIVIDUALS,

Petitioners/Cross-Respondents,

vs.

BAMTECH, LLC; DISNEY PLATFORM DISTRIBUTION, INC. (d/b/a Disney Streaming Services, LLC); ESPN, INC.; and THE WALT DISNEY COMPANY (d/b/a Disney Platform Distribution, Inc.).

Respondents/Cross-Petitioners BAMTech, LLC, Disney Platform Distribution, Inc.

Case No. 2:25-CV-03861-MWC-KS

**REPLY IN SUPPORT OF CROSS-PETITION TO COMPEL ARBITRATION AND TO STAY PENDING ARBITRATION PURSUANT TO 9 U.S.C. §§ 3, 4**

Filed Concurrently: Reply Declaration of Jonathan H. Blavin

Date: October 17, 2025
Time: 1:30 p.m.
Judge: Hon. Michelle Williams Court

# TABLE OF CONTENTS

**Page**

I. Introduction ..... 5

II. Argument ..... 6

A. The Opposition Omits Material Facts Regarding The Bellwethers ..... 6

B. Whether Petitioners Entered Into The 2024 Agreement Is An Issue Of Contract Formation For This Court, Not An Arbitrator ..... 7

C. The Existence Of A Prior, Superseded Arbitration Agreement Does Not Trump The 2024 Agreement, And The Tolling Agreement Did Not Preserve The Prior Agreement Indefinitely ..... 9

D. Petitioners' Remaining Arguments Are Delegated To ADR Services/NAM, And In Any Event Are Meritless ..... 12

III. Conclusion ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-cv-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018) .... 12, 13

*Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631 (9th Cir. 2021) .... 8, 12

*Brooks v. WarnerMedia Direct, LLC*, No. 23 Civ. 11030 (KPF), 2024 WL 3330305 (S.D.N.Y. July 8, 2024) .... 14

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) .... 12

*Gabourel v. Luxottica of Am.*, No. 2:22-cv-00471-FWS-MAA, 2023 WL 3050987 (C.D. Cal. Jan. 27, 2023) .... 7, 10

*Hansen v. LMB Mortg. Svcs., Inc.*, 1 F.4th 667 (9th Cir. 2021) .... 9

*Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939 (C.D. Cal. 2023) .... 13

*Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024) .... 13, 14

*In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932 (N.D. Cal. 2021) .... 14

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024) .... 15

*Knuston v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) .... 8, 9

*Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273 (S.D.N.Y. 2025) .... 14

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 13

*Trudeau v. Google LLC*,
816 F. App'x 68 (9th Cir. 2020) .......... 14

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 15

*Ventress v. Airlines*,
No. 03-00451 SPK-LEK, 2007 WL 9711004 (D. Haw. June 6, 2007) .......... 14

**STATE CASES**

*Brandwein v. Butler*,
218 Cal. App. 4th 1485 (2013) .......... 11

*George v. eBay, Inc.*,
71 Cal. App. 5th 620 (2021) .......... 16

*Givati v. Air Techs., Inc.*,
104 A.D.3d 644 (N.Y. App. Div. 2013) .......... 11

*Hohenshelt v. Sup. Ct. of L.A. Cnty.*,
18 Cal. 5th 310 (2025) .......... 7

*Pope Contracting, Inc. v. N.Y. City Hous. Auth.*,
214 A.D.3d 519 (N.Y. App. Div. 2023) .......... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Petitioners' Opposition, Dkt. No. 37 ("Opposition" or "Opp.") confirms that the Cross-Petition of Respondents BAMTech and Disney Platform should be granted. Dkt. No. 34 ("Cross-Pet."). Indeed, the Opposition effectively concedes that the Amended Petition, Dkt. No. 27 ("Am. Pet."), is defective and that this entire dispute is unnecessary, because Petitioners make an opt-out argument that, in their own telling, means they must "proceed directly to [c]ourt" to litigate their VPPA claims—not to JAMS. Opp. at 7; *see also* Cross-Pet. at 26–29 (citing cases). But even if that were not so, Petitioners have advanced no valid opposition to Respondents' Cross-Petition.

Petitioners do not dispute that at least 2,056 Petitioners—if not all of them, given their opt-out argument—agreed to the January 2024 ESPN+ Subscriber Agreement ("2024 Agreement"). Any Petitioner who entered into that agreement must pursue arbitration before ADR Services, Inc. ("ADR Services") or, if ADR Services is not available, before National Arbitration and Mediation ("NAM"). Whether the parties entered into the 2024 Agreement is a question of contract formation the Court decides, not any arbitrator, as Petitioners contend. Opp. at 10–11, 25. Given the uncontroverted record evidence that at least 2,056 Petitioners entered into the 2024 Agreement through their conduct, the Court should grant the Cross-Petition.

The contrary arguments in the Opposition are wrong on the law and the facts:

- Petitioners emphasize that (some of) the parties entered into a prior arbitration agreement, but ignore that the 2024 Agreement superseded prior agreements. The law is that the later agreement controls; Petitioners cite nothing contrary.
- Petitioners contend that an expired tolling agreement indefinitely preserved Petitioners' right to arbitrate under that earlier 2022 Agreement. This

argument fails on the face of the tolling agreement, as a matter of contract law, and as a matter of common sense.

- Petitioners make various other (meritless) arguments they admit are delegated to arbitration, and so cannot be decided by the Court. Petitioners' insistence that JAMS must decide these questions fails for the reasons above.

There also was no "adhesion" here. *Id.* at 1. Petitioners' sophisticated mass arbitration counsel, Labaton, has been vigorously pursuing their interests for years. Labaton heavily negotiated the parties' tolling agreements, chose to conduct bellwether arbitrations, and—anticipating amendments to the arbitration agreement, which are common in the ordinary course of business—negotiated for its clients bespoke rights held by no other ESPN+ subscribers. Those special rights did not include the right to arbitrate before JAMS indefinitely. The Court should hold Petitioners to the agreements their counsel negotiated and grant the Cross-Petition.

## II. <u>ARGUMENT</u>

### A. The Opposition Omits Material Facts Regarding The Bellwethers

Respondents respectfully disagree with many factual assertions in the Opposition but do not think an exhaustive reply is necessary to this Court's analysis. Respondents briefly correct the record as to just three material omissions.

First, in questioning Respondents' account of the bellwether results, Opp. at 3, Petitioners omit that each bellwether claimant pursued nearly 20 separate claims on average and the arbitrators were asked to issue a decision as to each. Reply Decl. of Jonathan H. Blavin ("Blavin Reply Decl.") ¶ 2. Of the ***more than 130 separate claims*** litigated to resolution, Labaton won just ***two***. *Id.* ¶ 3. Hence Respondents' representation that they won 98% of claims litigated. Cross-Pet. at 10, 17.

Second, Petitioners repeatedly assert that the bellwether claimants "received an average award of nearly $7,500" across the seven completed bellwethers but omit material facts regarding the actual breakdown. Opp. at 1, 3 & n.2, 18; *see id.* at 3 n.2. Only two bellwether claimants received awards of $2,500 each for the two total claims

Labaton won (of the more than 130 claims litigated to resolution). Waisnor Opp. Decl. ¶ 2. One of those two bellwether claimants received a modest award of fees and costs. *See id.* Petitioners omit that the other of those two bellwether claimants ***was denied fees and costs*** because the Arbitrator determined that winning one out of nearly 20 claims did not make the claimant the prevailing party. Blavin Reply Decl. ¶ 4. The five other bellwether claimants whose claims were litigated to resolution received nothing. *Id.*

Third, Petitioners state that "Respondents initially *failed* to pay *any* fees" for one of the bellwether arbitrations, "subjecting Respondents to sanctions." Waisnor Opp. Decl. ¶ 5; Opp. at 3. This omits that the late payment of fees was the result of an invoice processing error ***by JAMS*** and that no sanctions were awarded. Blavin Reply Decl. ¶ 5 & Ex. A. Subsequent controlling precedent makes clear that sanctions would not have been appropriate in such circumstances because there was no "willful, grossly negligent, or fraudulent" conduct by Respondents. *See Hohenshelt v. Sup. Ct. of L.A. Cnty.*, 18 Cal. 5th 310, 323 (2025).

### B. Whether Petitioners Entered Into The 2024 Agreement Is An Issue Of Contract Formation For This Court, Not An Arbitrator

At the outset, this Court need not resolve the parties' contract formation disputes because Petitioners concede that as a result of "opt[ing] out of any amended terms" in the 2024 Agreement they must "proceed directly to [c]ourt" to litigate their VPPA claims. Opp. at 7; *see also* Am. Pet. ¶ 32 & Ex. 16 at 2 (purporting to opt out); Cross-Pet. at 27 (citing, *e.g.*, *Gabourel v. Luxottica of Am.*, No. 2:22-cv-00471-FWS-MAA, 2023 WL 3050987, at *8–9 (C.D. Cal. Jan. 27, 2023) (when party exercises a right to opt out of a "new arbitration agreement," they "effectively opt[] out of arbitration" altogether)). In other words, Petitioners' position is that by opting out, the courts, not JAMS, are the proper fora for their VPPA claims.[1] Petitioners'

[1] Respondents have questioned whether all 3,553 Petitioners, particularly those not subject to the Tolling Agreement, have validly exercised opt-out rights. Cross-Pet. at

concession renders the Amended Petition defective and this whole dispute unnecessary, because in no event would JAMS be the appropriate forum for their claims to be litigated.

At any rate, Petitioners fundamentally confuse which questions are for this Court to decide and which questions have been delegated to an arbitrator. Although "'gateway' issues pertaining to an arbitration agreement, such as issues of validity and arbitrability, can be delegated to an arbitrator by agreement," "parties cannot delegate issues of [contract] formation to the arbitrator." *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634–35 (9th Cir. 2021). Contract formation questions are non-delegable because the "making of the agreement for arbitration," 9 U.S.C. § 4, provides the "basis upon which to compel arbitration," *Ahlstrom*, 21 F.4th at 635.[2] Thus, "the party seeking to compel arbitration[] has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knuston v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Here, to carry their burden on the Cross-Petition (and to show Petitioners had failed to carry their burden on the Petition), Respondents properly "sort[ed] Petitioners into distinct buckets" based on the arbitration agreements to which they

---

26 & n.8. Although that is a question for ADR Services/NAM to decide, *infra* Section II.D, Petitioners' position, if accepted, means all their VPPA claims must ultimately be resolved by the courts.

[2] Petitioners are incorrect that Respondents have taken a different position in other litigations. Opp. at 10–11 & n.6, 19–20. Each of the filings in the other litigations Petitioners cite correctly presented contract formation arguments to the court and separately argued that other, non-formation threshold arguments were delegated to arbitrators. *Id.* (citing Mot. to Compel Arb. at 17–25, *Swartz v. ESPN, Inc.*, No. 1:22-cv-01523-KM, Dkt. No. 13 (M.D. Pa. Dec. 12, 2022); Renewed Mot. to Compel Arb. at 18–28, *Swartz v. ESPN, Inc.*, No. 1:22-cv-01523-KM, Dkt. No. 44 (M.D. Pa. Feb. 9, 2024); Mot. to Compel Arb. at 20–26, 29–31, *Sadlock v. The Walt Disney Co.*, No. 3:22-cv-09155-EMC, Dkt. No. 18 (N.D. Cal. Apr. 6, 2023); Mot. to Compel Arb. at 9–13, 16–18, *Antoine v. ESPN Enters., Inc.*, No. 2:23-cv-00887-JLB-NPM, Dkt. No. 19 (M.D. Fla. Dec. 7, 2023)).

are and are not parties. Opp. at 25. Such Petitioner-specific evidence is necessary for this Court to decide whether the arbitration agreements at issue were formed—questions the Court must evaluate under "the summary judgment standard of Rule 56." *Hansen v. LMB Mortg. Svcs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).

For purposes of Respondents' Cross-Petition, the critical point is that at least 2,056 Petitioners agreed to the 2024 Agreement and therefore agreed to arbitrate their claims before ADR Services/NAM. Respondents submitted evidence that existing ESPN+ subscribers were given advance notice of the 2024 Agreement by email and afforded the opportunity to either accept or to discontinue using ESPN+ if they did not agree. Greeley Decl. ¶ 7 & Ex. C. Respondents also submitted evidence that at least these 2,056 Petitioners assented by subscribing to ESPN+, paying for an ESPN+ subscription, and/or watching video content on ESPN+ after the 2024 Agreement's effective date. Davis Decl. ¶¶ 9–10 & Exs. 1, 2; Luczywek Decl. ¶ 5.

Petitioners did not dispute this evidence or offer any contrary evidence. Respondents have therefore carried their burden to show formation of the 2024 Agreement by a preponderance of the evidence. *Knuston*, 771 F.3d at 565. Indeed, Petitioners' opt-out argument presupposes that all Petitioners agreed to the 2024 Agreement. Otherwise, they would not have a reason to "opt out" of the 2024 Agreement's arbitration clause. *See* Opp. at 7. These uncontested facts should be the start and end of the Court's analysis of the Cross-Petition, which should be granted in its entirety (and at least as to the 2,056 Petitioners).

### C. The Existence Of A Prior, Superseded Arbitration Agreement Does Not Trump The 2024 Agreement, And The Tolling Agreement Did Not Preserve The Prior Agreement Indefinitely

Petitioners suggest that the existence of the prior 2022 Agreement somehow trumps the uncontroverted formation of the 2024 Agreement.[3] *See* Opp. at 10–11.

[3] This argument also assumes that all Petitioners and Respondents are parties to the 2022 Agreement, which is contrary to the record evidence. *See* Cross-Pet. at 29–30.

That is incorrect as a matter of contract law. As explained in Respondents' Cross-Petition, the 2024 Agreement expressly "constitute[s] the entire agreement" between ESPN+ and ESPN+ subscribers and "supersedes all prior or other arrangements, understandings, negotiations and discussions." Cross-Pet. at 13, 24 (quoting 2024 Agreement § 8(o) (Greeley Decl. Ex. B)). The 2024 Agreement is thus "the final expression of the parties' agreement with respect to arbitration," and supersedes the 2022 Agreement. *Id.* at 24 (quoting *Gabourel*, 2023 WL 3050987, at *9). The 2024 Agreement also supersedes the 2022 Agreement for the independent reason that "a new agreement between the same parties on the same subject matter supersedes the old agreement." *Id.* (quoting *Gabourel*, 2023 WL 3050987, at *8, and citing *Pope Contracting, Inc. v. N.Y. City Hous. Auth.*, 214 A.D.3d 519, 520 (N.Y. App. Div. 2023)).

Petitioners' Opposition does not respond to these authorities and provides no authority for their contrary position that the Court can compel arbitration under a superseded arbitration agreement. The Opposition asserts in passing that Respondents "are currently compelling other VPPA claims to arbitration" under the 2022 Agreement. Opp. at 5. That assertion reprises an argument from Petitioner's opening papers. Am. Pet. ¶¶ 64–66; Dkt. No. 28 at 12–13. Respondents have already explained why that argument is wrong: Those instances "predate the 2024 Agreement and merely confirm that Respondents and/or their affiliates sought to enforce the 2022 Agreement while the 2022 Agreement was in effect." Cross-Pet. at 24–25. The Opposition has no response to that explanation.

Instead of trying to argue that the 2024 Agreement did not supersede the 2022 Agreement as a matter of contract law, Petitioners instead argue that a separate agreement "preserved claimants' right to arbitrate under the 2022 Agreement" indefinitely. Opp. at 5–6 (citing Am. Pet. Ex. 6 ("March 2023 Tolling Agreement" or "Tolling Agreement")). Petitioners' interpretation of the Tolling Agreement is contrary to that agreement's plain language and common sense.

As an initial matter, Petitioners are incorrect that "Respondents expressly agreed that the 2024 Agreement would not apply to Petitioners." *Id.* at 5. The Tolling Agreement expressly states that the parties had no "agreement as to the applicable version of the Disney/BAMTech Subscriber Agreement that might apply." March 2023 Tolling Agreement ¶ 10. Rather, the Tolling Agreement prevented the enforcement of material changes to the parties' arbitration agreement against Labaton's clients during "the term of [the] Agreement," i.e., the Tolling Period. *See id.* ¶¶ 1, 10; Am. Pet. Ex. 10 ¶ 8 (Bellwether Agreement extending Tolling Period). Petitioners' interpretation is incompatible with this plain language.

Petitioners' interpretation is similarly incompatible with the opt-out right that they assert. The Tolling Agreement specifically addresses the parties' rights after it "expires or is terminated": Claimants have "30 days … to opt out of any amended terms placed into effect during the Tolling Period." March 2023 Tolling Agreement ¶ 10. That opt-out right would make no sense on Petitioners' reading. If the Tolling Agreement guaranteed that the 2022 Agreement would remain in effect indefinitely, notwithstanding any amendments, there would be no reason for an opt-out provision allowing Petitioners to "opt out of any amended terms" and the provision would be meaningless. The Court must "give effect to all of [the] contract's terms" and avoid Petitioners' interpretation, which would render the opt-out provision "superfluous, void or inexplicable." *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1507 (2013); *Givati v. Air Techs., Inc.*, 104 A.D.3d 644, 645 (N.Y. App. Div. 2013) (same).

Petitioners' reading likewise cannot be squared with their admission that opting out enables them to "proceed directly to [c]ourt." Opp. at 7. As Petitioners acknowledge, the effect of the opt-out, which Petitioners repeatedly claim they all exercised (Am. Pet. ¶ 49 & Ex. 16; Opp. at 2) means that they must pursue their claims individually in court, Opp. at 7, not that they may pursue claims in JAMS pursuant to the superseded terms of a superseded agreement. Cross-Pet. at 18, 27.

Petitioners seek to bolster their argument regarding the Tolling Agreement with a solo concurrence by Justice Gorsuch in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). Opp. at 7. A solo concurrence is not the law. As Respondents have explained, the majority opinion in *Coinbase* holds that a court, not an arbitrator, must decide between incompatible agreements that call for arbitration, on the one hand, and litigation in court, on the other. Cross-Pet. at 29. *Coinbase* does not apply here because there are no such incompatible agreements: Enforcement of the 2024 Agreement is consistent with both the 2022 Agreement's terms contemplating future amendments and the Tolling Agreement's provisions contemplating that amendments could be "placed into effect" during the Tolling Period. *Id.* at 28–29. In any event, if *Coinbase* applied, *this Court* would decide which agreement controls. In no scenario would JAMS decide that question. *Id.* at 29.

### D. Petitioners' Remaining Arguments Are Delegated To ADR Services/NAM, And In Any Event Are Meritless

Unlike contract formation questions, Petitioners' arguments regarding the enforceability or validity of the 2024 Agreement have been delegated to ADR Services/NAM. 2024 Agreement § 7 (delegating to ADR Services/NAM "exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability"); *Ahlstrom*, 21 F.4th at 634–35 ("issues of validity and arbitrability[] can be delegated to an arbitrator"). Petitioners concede that the Court lacks authority to consider these arguments. Opp. at 3. In any event, these arguments are meritless.

***Opt-Out.*** Petitioners assert that they all opted out of the 2024 Agreement and concede this opt-out argument is delegated to an arbitrator. Opp. at 10. All the Court must decide is to which arbitral provider the issue has been delegated. The answer is ADR Services/NAM for the reasons above.

As explained in Respondents' Cross-Petition, opt-out arguments concern the termination of a "previously rendered acceptance." Cross-Pet. at 26–27 (quoting *Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-cv-04383-BLF, 2018 WL 6268876, at

*3 (N.D. Cal. Nov. 30, 2018)).  Here, Petitioners all purport to have opted-out of the 2024 Agreement, which presumes that they all "previously rendered acceptance" of the 2024 Agreement—and, thus, all agreed to the 2024 Agreement, *see supra* at 9; Cross-Pet. at 12, 33—including the provision delegating "exclusive authority to resolve" issues of "interpretation, applicability or enforceability" to ADR Services/NAM and the provision superseding all prior arbitration agreements between the parties.  *Id.* (quoting 2024 Agreement § 7).  Petitioners' position—that their purported opt-out termination of the 2024 Agreement is delegated to JAMS pursuant to the terms of the superseded 2022 Agreement—is contrary to the authorities Respondents cited, and Petitioners offer no supporting authority of their own.  *Supra* Section II.C.  Petitioners' position also is inconsistent with their concession that opting out means they must proceed in court—not JAMS.  Opp. at 7.

***Unconscionability.***  Petitioners' argument that the 2024 Agreement is unconscionable is a question of "enforceability," and the "exclusive authority" to decide that question likewise has been delegated to ADR Services/NAM.  2024 Agreement § 7; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (refusing to decide unconscionability in the face of substantively identical delegation clause).  The Court thus lacks authority to decide unconscionability.  As Petitioners concede, "the only question is which arbitral provider … has jurisdiction."  Opp. at 8–9.  The answer is ADR Services/NAM, as explained above.

Even if the Court could reach Petitioners' unconscionability arguments, they would fail on the merits.  Petitioners rely on *Heckman v. Live Nation Entertainment, Inc.*, 686 F. Supp. 3d 939, 953 (C.D. Cal. 2023), *aff'd*, 120 F.4th 670 (9th Cir. 2024), which is readily distinguishable.  Opp. at 14–15.  *Heckman* concerned "a newly created entity" formed specifically for the defendants, with "novel and unusual procedures" that were "internally inconsistent."  120 F.4th at 676–78.  This newly created arbitration provider had "sole discretion" to choose arbitrators, and each arbitrator had unbounded discretion to apply "precedent" from bellwethers to other

claimants' claims. *Id.* at 678, 683, 685. Moreover, claimants were required to upload all their evidence within 14 days of filing, and threshold issues could not be decided before a merits decision. *Id.* at 679.

Here, Petitioners do not and cannot suggest that Respondents have any inappropriate relationship with ADR Services/NAM. And they do not show that ADR Services or NAM have anything like the rules at issue in *Heckman*, which raised fundamental due process concerns. Petitioners do not identify any supposedly problematic ADR Services rules, and merely state generally that NAM has rules to coordinate large numbers of similar claims. Opp. at 14–15. That may be so, but it does not implicate *Heckman*. Indeed, courts have recognized that the "procedures at issue in *Heckman*—and, correspondingly, the unconscionable aspects of it—are not present" in NAM's mass arbitration rules. *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 298 (S.D.N.Y. 2025); *Brooks v. WarnerMedia Direct, LLC*, No. 23 Civ. 11030 (KPF), 2024 WL 3330305, at *17–18 (S.D.N.Y. July 8, 2024).

Instead, Petitioners' fundamental argument is that the 2024 Agreement switches the arbitration provider from JAMS to ADR Services/NAM, which have somewhat different rules. Courts routinely reject that sort of argument, because there is nothing improper about "merely swap[ping] one arbitration provider … for another." *See, e.g.*, *Ventress v. Airlines*, No. 03-00451 SPK-LEK, 2007 WL 9711004, at *7 (D. Haw. June 6, 2007) (enforcing later-in-time of two arbitration agreements); *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 953–54 (N.D. Cal. 2021) (rejecting unconscionability argument where terms were not "materially different" but rather merely specified an arbitral venue); *Brooks*, 2024 WL 3330305, at *17 (rejecting unconscionability argument regarding change of arbitration providers for past claims, recognizing that "courts have permitted this kind of retroactivity" "[i]n the context of consumer contracts" (citing *Trudeau v. Google LLC*, 816 F. App'x 68, 70 (9th Cir. 2020) (unpublished))). *Heckman* is not to the contrary: It stands for the proposition that a company cannot stand up a Potemkin arbitration provider with

facially one-sided rules, not that a company cannot switch from one respected arbitration provider to another. ADR Services and NAM are long-established and reputable arbitration providers before which courts in this district routinely compel arbitration. *See* Cross-Pet. at 28 (collecting cases).

Petitioners' other unconscionability arguments likewise fail. The pre-arbitration informal dispute resolution process that Petitioners challenge as "one-sided," Opp. at 15–16, is far from it. It seeks to "avoid the costs" of arbitration or litigation, a benefit to both sides. 2024 Agreement § 7(b). It requires that "the claiming party" send notice, including when the claiming party is BAMTech or Disney Platform. 2024 Agreement § 7(b). Both sides must "participate" in the meet-and-confer, with counsel if they wish. *Id.* Because BAMTech and Disney Platform are corporate entities, they appear "through one or more representatives." *Id.* There is nothing one-sided about this provision.

Petitioners also argue that the 2024 Agreement is unconscionable because it permits an arbitrator to award relief "as a court could … only to the extent required to satisfy such party's individual claim." Opp. at 17 (quoting 2024 Agreement § 7(c)). It is not unconscionable to align the relief available in arbitration with the equitable powers of federal courts, which generally cannot grant equitable relief in favor of nonparties. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841–47 (2025). Even if the scope of available relief were invalid (it is not), that would not "require voiding the *entire* arbitration provision." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1022–23 (9th Cir. 2024).

Finally, Petitioners' argument that ADR Services' filing fees are excessive fails. Courts in this district routinely compel arbitration before providers with comparable filing fees, including ADR Services itself. *See* Cross-Pet. at 28 (collecting cases). Petitioners say nothing about these cases other than to make the irrelevant point that they concerned California arbitrations. *See* Opp. at 19.

***Good faith and fair dealing.*** Petitioners invoke the implied covenant of good faith and fair dealing. Opp. at 11–13. That argument is inapt because there is no claim here for breach of the covenant of good faith and fair dealing. To the extent Petitioners assert (without citing any authority) that the covenant is a defense to the validity of the 2024 Agreement, that argument would be delegated to ADR Services/NAM for the reasons above.

In any event, there is no colorable violation of the covenant of good faith and fair dealing here. Anticipating new terms, Labaton negotiated bespoke opt-out rights for its clients. The parties jointly drafted the Tolling Agreement, which contemplated that "amended Terms" could be "placed into effect" during the Tolling Period and granted Labaton's clients rights held by no other ESPN+ subscribers. March 2023 Tolling Agreement ¶ 10. The Tolling Agreement was "prepared jointly" with representation by "competent"—indeed, sophisticated—"counsel." *Id.* ¶ 14. The promulgation of a new subscriber agreement, as specifically contemplated under that agreement, cannot constitute bad faith or unfair dealing. *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 637 (2021) (noting that no California court "has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement" (citation omitted)).

## III. CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court grant the Cross-Petition and compel Petitioners to submit their claims to arbitration before ADR Services or, if ADR Services is not available, before NAM. In the event the Court does not grant the Cross-Petition, Respondents respectfully request a stay of proceedings pending appeal. *See* 9 U.S.C. § 16(a)(1)(B).

DATED: October 10, 2025

MUNGER, TOLLES & OLSON LLP

By: */s/ Jonathan H. Blavin*
JONATHAN H. BLAVIN
*Attorneys for Respondents/Cross-Petitioners*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Respondents/Cross-Petitioners, certifies that this brief, in relevant part, does not exceed 12 pages in length, which complies with the page limit in Section 6(c) of the Court's Civil Standing Order.

DATED: October 10, 2025

By:     */s/ Jonathan H. Blavin*
            JONATHAN H. BLAVIN

-18-   Case No. 2:25-CV-03861-MWC-KS
REPLY IN SUPPORT OF CROSS-PETITION TO COMPEL ARBITRATION AND TO STAY